530 So.2d 27 (1988)
Edward Lee DARGHTY
v.
STATE of Mississippi.
No. 57621.
Supreme Court of Mississippi.
July 20, 1988.
*28 Joe Morgan Wilson, Senatobia, for appellant.
Edwin Lloyd Pittman and Mike Moore, Attys. Gen. by Pat Flynn, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and PRATHER and SULLIVAN, JJ.
HAWKINS, Presiding Justice, for the Court:
Edward Lee Darghty appeals from his three convictions in the circuit court of Tate County of having felonious carnal knowledge of his step-daughter, and sentence to four years imprisonment for each charge with the sentences to run consecutively. Because of the improper exclusion of the testimony of a defense witness when Darghty had violated Rule 4.06 of the Uniform Criminal Rules of Circuit Court Practice, we reverse.

FACTS
Darghty was born January 4, 1940. On June 10, 1984, he and Mary Alice Compton Darghty were married. Prior to their marriage they had lived together. Mary Alice had two children by a previous marriage, Michael, age 13, and Kathy Lynn Compton, who was born September 15, 1970.
The grand jury of Tate County on October 30, 1985, indicted Darghty for having had on June 3, 1985, felonious carnal knowledge of Kathy, his step-daughter, in violation of Miss. Code Ann. § 97-5-41.
On February 3, 1986, Darghty filed a motion for discovery under Rule 4.06 of our Uniform Criminal Rules of Circuit Court Practice. The motion asked for extensive discovery, including the names of State witnesses. The State duly responded with written discovery on February 7, and made supplemental discovery thereafter.
On June 5, 1985, Darghty signed a written confession admitting having had sexual relations with Kathy on June 3, 1985, as well as other occasions for a period of a year. This written confession was given to, and signed in the presence of J.F. (Jay) Clark, a Mississippi Highway Patrolman with many years of criminal investigative experience, and Eddie Hadskey, a deputy sheriff.
On March 21, 1986, the court entered an agreed order consolidating four charges against the defendant for trial.
On March 28, 1986, Darghty filed a motion to suppress the confession, which was heard by the court on May 7, the first day *29 of Darghty's trial. In the hearing on the motion to suppress, Darghty made no charge against the officers having violated any of his rights in securing the confession, and insofar as the officers' conduct was concerned, even Darghty made no contention that the confession was not free and voluntary. He did contend, however, that the confession was given as a result of promises made by his wife that if he would sign the motor vehicle title to a pickup truck owned by him, but upon which she had co-signed a promissory note secured by the title to the truck, that she would get the charges reduced so that he would not have to go to jail.
He testified as follows:
A. Well, before they came, my wife, Mary Compton Darghty, had came to me with the title for my pick-up truck and told me that if I would sign the truck over you know, sign the title so she could have the truck put in her name, and sign a statement saying, you know, that I was guilty, you know, of doing this, that arrangements were to be made through the Justice Court, you know, where I went for my hearing, that I would just be  it was my belief that the charge was going to be reduced and I was going to receive a six months sentence, a $500.00 fine and be suspended and asked to leave the state.
Q. Now, are you telling this Court that you would admit something that you didn't do in return for that? Tell us your motives behind what you did?
A. Well, at that time, I was very upset and nervous and as you know I have a bad heart condition and I just did not want to be in there where I was on account of my condition and I had talked to people in there, you know, they'll ask you what you're there for and so on, the other inmates that were there at the time, and when she came to me with this, you know, I just decided that lewd, licentiousness or whatever they were going to offer me was, you know a lot better than staying in there for the length of time that I have already stayed in there.
Q. So, did you sign the title over?
A. Yes, sir.
Darghty said the conversation between him and his wife took place at the jail, with Darghty being in a room with several cellmates, and his wife just beyond the door to the cell. They talked through an opening in the door. Darghty said that several other inmates were sitting at the table while he was talking to his wife through the door opening. He recalled Willie Lee Loveberry, Bobby Joe Carter, and Jesse Jones specifically. He said they could easily hear what was being said.
Following the hearing the circuit judge ruled the confession to be competent, because anything the wife said could not be attributed to the State. The judge noted that Mary Alice was not an agent or representative of the State, nor was there any proof that she received any encouragement from the State in any respect. The court then concluded as follows:
[T]here's just no basis for a suppression here. It's going to be a question for the Jury as to the truthfulness of the statement; that's purely a factual situation. The Jury can accept it or reject it. My duty is to determine whether or not the statement was given through product of force, threat, intimidation, promises of reward or leniency, trickery or deceit by law enforcement officers acting in the color of the law, and it's just not here, but to the contrary in every respect. The Jury has a right to consider the circumstances, the environment and whatever else may exist at the time of the giving of the statement and ultimately they can accept it as being true or not true, but nothing in the testimony reveals any action by the State that would violate any Constitutional rights of this Defendant... .
After the court overruled the motion to suppress the confession, the trial proceeded by selection of the jury. Kathy was the first witness and testified about Darghty's having had sexual relations with her. *30 Mary Alice then testified. She was an employee at the local Quick Stop. She admitted having gone to the jail following Darghty's arrest and asking him to sign the title to the pickup truck over to her. She denied, however, agreeing to drop charges or making him any promise if he would do so.
Gloria Connelly, a special education teacher, and Rita Amburn, a teaching counselor, testified about attempting to assist Kathy, who dropped out of school subsequent to the charges being made against Darghty.
The State then introduced the confession through testimony of Hadskey and Clark.
When the State rested, the defense made a motion for a directed verdict, which was overruled.
Defense counsel then announced in chambers that the defendant wanted to call as his first witness Willie Lee Loveberry.
The State objected to Loveberry on the ground that his name had not been furnished pursuant to Rule 4.06, and the trial judge sustained the objection. The record shows the following:
MR. KELLY:
Your Honor, the State of Mississippi objects to that for the following reasons: The defendant sought discovery under Rule 406 [sic]. The State complied with that rule. The court file will reflect that in the State's response the State demanded or requested reciprocal discovery. There has been no reciprocal discovery filed by the defendant. Our Supreme Court has ruled that 406 [sic] is self-executing.
* * * * * *
Now, the State has rested its case, and the defendant now wants to call someone who has not been supplied through discovery, and the State objects, and claims that the defendant can't give the Court a rational basis 
THE COURT:
Well, I'm bound to sustain the objection. Rule 406 [sic] is a self-executing rule. It's not fair to require the State to supply discovery and then let the defendant sandbag and come in halfway through the trial and start calling unknown witnesses. It hasn't worked that way since the rule has been in effect, so I sustain the objection.
Defense counsel made profert of Loveberry's testimony to the court in chambers. Loveberry testified, as follows, regarding the conversation between Mary Alice and Darghty:
Well, first of all, as she approached the window and got to talking with him, she called it to his attention about his truck, the title to the vehicle. She wanted him to sign this title over to her. And she asked  she stated that wouldn't no charges be brought against him if under these circumstances that he sign this title over to her.
Following Loveberry's testimony, the court ruled as follows:
THE COURT:
The Court will stand on its ruling. It just seems like the very situation that Rule 406 [sic] was created for, to avoid these types of conflicts.
He's had ample time and ample time to supplement discovery in the case in the event that this became known, and it just hasn't been done. So this is what 406 [sic] was designed for.
I stand on my prior ruling.
Darghty took the stand in his own defense and testified about having had serious heart problems and being hospitalized for this condition. He denied having ever molested Kathy in any way, and charged that the whole matter had been trumped up by his wife as a scheme to get rid of him. He contended that he signed the written confession because his wife had represented to him that he would sign the title over to her and would make this confession, he would get a light sentence and fine and be permitted to leave the state. He said he was a sick man, and did not believe he would live through having to go to jail. The record reveals the following:
A. She came to the jail to see me and asked me if I would, you know, sign titleship of my pickup truck over to *31 her, which she was co-signed on. She asked me, and I told her no.
And then she informed me, she said, well, that if I'd sign the truck over to her and sign a statement of guilt, you know, that a lesser charge would be put against me, and I would be given a light sentence and a light fine and be asked to leave the State of Mississippi and not bother her.
And I told her, I said, "Well, you didn't have to do this to me to get rid of me. All you had to do was say go and I would have went."
Q. How did you feel about her asking you to admit to doing something you didn't do?
A. Well, I'm not a totally ignorant man. I've seen what happens to men, you know, the prison terms that they received and whatever for charges of this sort. And I thought, you know, in my condition I could not stand, I would not be able to stand to be incarcerated like that. So, I figured it was the lesser of two evils.
Q. Were you afraid of dying in jail?
A. Yes, sir, very much so.
There is no dispute but that Darghty and his wife did have a conversation in jail, following which she went to the bank which held the motor vehicle title, got the document and returned to the jail, where Darghty signed it and, following this, he was questioned by the officers and signed the written confessions. The only dispute is whether or not Mary Alice made any promises to Darghty that if he signed the title over to her the charges against him would be drastically reduced. Following trial and instructions to the jury, the jury retired and returned a verdict of guilty against Darghty on all three of the indictments.
The circuit judge sentenced Darghty to a term of imprisonment of four years.

LAW
The State in this case made a very strong case on the issue of Darghty's guilt. The judge properly ruled that Darghty's confession was competent because the officers had given Darghty all Miranda warnings, and had treated him courteously prior to taking the statement. There was no proof, or intimation that Mary Alice, even if she made the statements Darghty claimed, did so at the request of any law enforcement officer. Conduct by third parties not connected with the law enforcement officers in the investigation will not vitiate a confession which might be rendered incompetent and inadmissible if such conduct had been committed by a law enforcement officer. See, Colorado v. Connelly, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); Lockett v. State, 517 So.2d 1317 (Miss. 1987); Penry v. Lynaugh, 832 F.2d 915 (5th Cir.1987).
As the circuit judge also held, however, such a promise by the wife would be relevant before the jury who had to weigh the credibility of the confession. Wilson v. State, 451 So.2d 724 (Miss. 1984); Diddlemeyer v. State, 234 So.2d 292 (Miss. 1970) cert. denied, 400 U.S. 917, 91 S.Ct. 177, 27 L.Ed.2d 157 (1970); Brooks v. State, 178 Miss. 575, 173 So. 409 (1937); Brown v. State, 142 Miss. 335, 107 So. 373 (1926).
Darghty was entitled to have the jury hear and consider whether or not his wife made any such promise, and whether or not it had any effect upon him in deciding to confess to the criminal charges. This was an integral part of his defense. Whether the jury chose to believe it was another matter, but at least he was entitled to have the jury consider this testimony and evidence.
Loveberry's testimony was therefore relevant in corroboration of Darghty's testimony about his wife's promise.
The sole issue raised upon this appeal is the claim by Darghty that the court erred by excluding Loveberry's testimony because of a Rule 4.06 violation. We agree.
The pertinent portion of Rule 4.06 of the criminal procedure rules states:
RULE 4.06 DISCOVERY
(a) The prosecution shall disclose to each defendant or to his attorney, and permit him to inspect, copy, test, and *32 photograph upon request and without further order the following:
(1) Names and addresses of all witnesses in chief proposed to be offered by the prosecution at trial;
* * * * * *
(c) If the defendant requests discovery under this Rule, the defendant shall, subject to constitutional limitations, disclose to the prosecutor and permit him to inspect, copy, test and photograph the following information and material which corresponds to that the defendant sought and which is in the possession or control of the defendant or his counsel;
(1) names and addresses of all witnesses in chief proposed to be offered by the defendant at trial;
* * * * * *
Defense counsel shall make the foregoing disclosures simultaneously with the corresponding disclosure from the prosecutor.
* * * * * *
(j) If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, or enter such other order as it deems just under the circumstances.
Willful violation by counsel of an applicable discovery rule or an order issued pursuant thereto may subject counsel to appropriate sanctions by the court.
There is no question but that Darghty violated this Rule. He failed to furnish Loveberry's name as a witness after the State had fully complied with his discovery request. Under a plain reading of the rule, it was a discretionary matter with the circuit court whether or not Loveberry's testimony should have been received. In Coates v. State, 495 So.2d 464, 466-68 (Miss. 1986), we held within the trial court's authority an order excluding evidence the defense was obligated to produce in discovery but did not. Federal constitutional doctrine announced after Coates appears to limit the exclusion sanction to cases where the defendant's discovery violation was "willful and motivated by a desire to obtain a tactical advantage." Taylor v. Illinois, 474 U.S. ___, ___, 108 S.Ct. 646, 655, 98 L.Ed.2d 798, 814 (1988).
Unfortunately for the State, however, the circuit judge did not follow the procedure we have outlined in previous cases when the prosecution violated the rule. Thus far, all discovery violations we have encountered have been those in which the State was the transgressor.
When the defendant has claimed on appeal that the circuit court should have excluded such evidence, we have consistently held that a discovery violation by the State does not automatically justify the exclusion of evidence. Instead, we have required the circuit judge and the defendant to take certain steps before error could be urged on appeal. Subsequent to our decision in Coates, we decided Cole v. State, 525 So.2d 365 (1987). In Cole the Court said unequivocally, as a matter of state procedural law, that:
When faced with a discovery violation, technical or otherwise, the trial court should follows this procedure:
1) Upon defense objection, the trial court should give the defendant a reasonable opportunity to become familiar with the undisclosed evidence by interviewing the witness, inspecting the physical evidence, etc.
2) If, after this opportunity for familiarization, the defendant believes he may be prejudiced by lack of opportunity to prepare to meet the evidence, he must request a continuance. Failure to do so constitutes a waiver of the issue.
3) If the defendant does request a continuance the State may choose to proceed with trial and forego using the undisclosed evidence. If the State is not willing to proceed without the evidence, the trial court must grant the requested continuance.
Box v. State, 437 So.2d 19 (Miss. 1983) (Robertson, J., specially concurring). See also *33 Griffin v. State, 504 So.2d 186, 195 (Miss. 1987). Arguably, this was already the law prior to Coates. See Watts v. State, 492 So.2d 1281, 1290 (Miss. 1986); Hall v. State, 490 So.2d 858, 859 (Miss. 1986); Gray and Nations v. State, 487 So.2d 1304, 1313-14 (Miss. 1986); Jones v. State, 481 So.2d 798, 803 (Miss. 1985); Cabello v. State, 471 So.2d 332, 343 (Miss. 1985), cert. denied, 476 U.S. 1164, 106 S.Ct. 2291, 90 L.Ed.2d 732 (1986). Today we remove any doubt to the extent it may be inconsistent with what we say this day, Coates stands modified.
In this case the circuit judge did not recess court in order for the State to interview Loveberry, and inform the court whether it would be prejudiced by lack of opportunity to interview him. And, of course, the State made no motion for a continuance. The court simply excluded Loveberry's testimony. Even-handed application of the Rule requires the same procedure to be followed when the State objects to testimony because of a defendant's violation as when the defendant objects for the same reason. See Coates v. State, supra, at 467; Acevedo v. State, 467 So.2d 220, 224 (Miss. 1985). Such proferred evidence cannot be rejected out of hand.
Loveberry's testimony being relevant and competent, it was prejudicial error to exclude it without following our procedural guideline. Accordingly, we reverse and remand for another trial.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.