[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1317 
Mable Morgan was indicted for the offense of theft of property in the first degree in violation of § 13A-8-3, Code of Alabama 1975. The jury found Morgan guilty as charged in the indictment, and she was sentenced to five years' imprisonment and ordered to pay $6,500 in restitution. The court denied Morgan probation, and she requested a restitution hearing. At the restitution hearing, the trial court amended its previous order and ordered Morgan to pay $13,835.52 in restitution to the City of Jasper, Alabama.
 I
Morgan contends that the evidence was insufficient to support the jury's verdict because the state failed to establish a prima facie case of theft of property in the first degree. We disagree.
"In determining the sufficiency of the evidence to sustain the conviction, this court must accept as true the evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider the evidence in the light most favorable to the prosecution." Faircloth v. State,471 So.2d 485, 489 (Ala.Cr.App. 1984), aff'd, 471 So.2d 493
(Ala. 1985). Where, moreover, the state establishes a prima facie case, conflicting evidence presents a jury question, which is not subject to review on appeal. See Willis v. State,447 So.2d 199, 201 (Ala.Cr.App. 1983).
The offense of theft of property in the first degree is defined as "[t]he theft of property which exceeds $1,000.00 in value, or property of any value taken from the person of another. . . ." § 13A-8-3(a), Code of Alabama 1975.
After examining the evidence and applying the proper standard of review, we find that there was sufficient evidence presented by the state to allow the jury to conclude beyond a reasonable doubt that Morgan was guilty of the crime as charged.
Tommy Knight, Morgan's supervisor at the parks and recreation board of the City of Jasper, testified that Morgan was responsible for collecting money from various sources for the board. Knight testified that whenever Morgan received funds, either in the form of checks or currency, she was supposed to prepare a receipt for the funds from either the registration, swimming lessons, or rentals receipts books, depending on what the funds were for, and give the individual making payment a copy of the receipt. According to Knight, Morgan was then supposed to place the funds in a lock box to which Morgan had the only key. Knight further testified that at the end of the week, Morgan was supposed to balance the funds on hand with the receipts in each book and then take the funds and the three receipt books to city hall, where two different municipal employees would then count the funds and the amounts noted on the receipts, note the weekly totals in red ink on each of the three receipt books, and issue a separate receipt from city hall to the parks and recreation board for the total of funds received from the board for that week.
Knight further testified that the only person who had access to the receipts, the lock box, and the other records concerning the board from March 1985 until October 1987 was Morgan, except that when Morgan was absent from work, either Knight or his assistant, Willie Moore, would collect the money.
Kathy Chambless, the accountant for the City of Jasper, testified that the records at city hall did not show funds paid from the parks and recreation board for the weeks ending October 2 and October 9, 1985, but that the receipt books for three weeks included red notations that funds had been paid to city hall for those weeks. Chambless further testified that the handwriting of the person or persons who made the red notations on the board receipt books for the weeks in question did not appear to bethat of any of the clerks at city hall. Chambless also testified that she did not *Page 1318 
make the notation in red ink in one of the receipt books which stated "Turned [receipt] No. 716-A through 718-B on March 27, '87, K.C." and that whoever made the notation used Chambless's initials without her authorization.
George Deavors, a certified public accountant, testified that in his opinion, approximately $15,000 was collected by the parks and recreation board and not paid to city hall during the period from March 1985 through October 1987. He stated that he reached his conclusion by comparing the red-ink entries in the parks and recreation board receipt books reflecting funds paid to the City of Jasper weekly with the receipts to the parks and recreation board in the city's books showing the total funds received for the week and calculating the difference between the two totals.
Deavors further testified that in his opinion the offense was committed by a city employee who had access to the checks and the currency and the receipt books, the latter of which stated that all currency and checks collected by the board during a given week were paid to the city, when in actuality only the checks had been turned in to the city — the employee kept the currency for personal gain.
Lamar Miller, a document examiner, testified as an expert that in his opinion Morgan had made 33 of the red-ink entries in the parks and recreation board books, indicating that currency and checks had been paid to the city, when in actuality only checks had been paid to the city.
Based upon the overwhelming evidence presented by the state, the jury was able to conclude beyond a reasonable doubt that Morgan took currency which exceeded $1,000.00 in value from the City of Jasper, because, inter alia, 1) for the three years in question, Morgan had the only key to the parks and recreation board lock box and she also had access to the board's receipt books and 2) Morgan's handwriting was positively identified as having made the red-ink notations appearing on the board receipt books, which stated that currency and checks had been turned in to the city when in actuality only checks had been turned in.
 II
Morgan contends that the trial judge substantially interfered with her right to cross-examine witnesses at trial in violation of § 12-21-137, Code of Alabama 1975, thus mandating reversal and a new trial. As a corollary contention, Morgan posits that the trial court's remarks to defense counsel in the presence of the jury, when combined with the trial court's unduly restrictive cross-examination, constituted reversible error.
The latitude and extent of cross-examination are within the sound discretion of the trial judge and will not be disturbed on appeal unless there is an abuse of discretion. Blackmon v.State, 449 So.2d 1264 (Ala.Cr.App. 1984). These rules allow the trial judge to exercise his rightful control over proceedings by moving testimony along expeditiously. Oglen v. State,440 So.2d 1172 (Ala.Cr.App.), cert. denied, 440 So.2d 1177
(Ala. 1983).
Where, moreover, questions are repetitious, concern wholly collateral matters, are irrelevant, or are harassing, annoying or humiliating, the holding of the trial court will not be reversed unless the record reveals a clear abuse of discretion by the trial court. Thompson v. State, 503 So.2d 871
(Ala.Cr.App. 1986), aff'd, 503 So.2d 887 (Ala. 1987), cert. denied, 484 U.S. 872, 108 S.Ct. 204, 98 L.Ed.2d 155 (1987).
 " 'Manifestations of impatience by the court at the methods or requests of counsel are not only in bad taste but may also constitute error; but it has also been held that the trial judge's indications of impatience with counsel are not expressions by the court or belief in accused's guilt of the crime charged, and that allegations of error in such indications do not prove themselves.' "
Oglen, 440 So.2d at 1175, quoting 23 C.J.S. Criminal Law, § 989.
 " 'Remarks by the trial judge may be open to criticism, but they are not error unless they may have affected the result of the trial. . . . It is not every erroneous *Page 1319 
expression of opinion by a trial judge, during trial, that will furnish a ground for reversal. To do so it must, in some manner, influence the result of the cause, or be supposed to do so. . . . . Each case rests upon its own peculiar facts and circumstances.' (citations omitted)."
Oglen, 440 So.2d at 1175, quoting McCovery v. State,365 So.2d 358, 362-63 (Ala.Cr.App. 1978).
We have examined each of the 14 instances where Morgan contends that either her cross-examination was limited or the trial court made improper remarks to defense counsel in the jury's presence, and we find no abuse of the trial court's discretion, viewing the instances either singly or cumulatively.
When defense counsel wrote on a demonstrative aid that the state intended to use further in the trial, the trial court instructed defense counsel to make no further markings on the state's demonstrative aid unless defense counsel could show a need to do so. Defense counsel did not express a need to write on the aid and cannot now claim prejudice resulting from the court's ruling.
With respect to Morgan's cross-examination of George Deavors, the trial court properly refused to allow the witness to testify as to hearsay statements allegedly made by the prosecutor outside the jury's presence but allowed the witness to testify as to statements which the witness had made to the prosecutor outside the jury's presence. During this testimony, some members of the audience laughed. The court's subsequent admonition to members in the audience that the next person to laugh or make an audible comment during the trial would be ejected from the courtroom could not be construed as prejudicing Morgan or her counsel and could not serve as a ground for reversal.
With respect to Morgan's cross-examination of Tommy Knight, the court has searched the record and has not found any instance where Morgan's right to cross-examination was limited in any way. Later, during Morgan's cross-examination of Knight, the trial court made the following remarks to defense counsel:
 "THE COURT: Mr. Tatum, just one moment. Right now, I'm going to instruct that any witness in this court is going to be treated with courtesy and respect. You'll allow the man to answer the question, and you will give him time to answer before you jump on him.
 "MR. TATUM: Well, Your Honor, with all due respect —
 "THE COURT: That's enough. You go ahead with your questions.
"MR. TATUM: May we approach the bench?
"THE COURT: No.
 "Mr. Knight, you were telling me to show you something.
 "A: I was asking you — if Scott did, I don't remember it.
"Q: What did you want me to show you?
 "A: Can you show me a receipt where he made —
"Q: Can I show you?
 "(At this point, Mr. Tatum, the witness, and the Court were talking at once and a portion of the record is unintelligible)
"A: I'm asking you —
 "MR. TATUM: If it please the Court, I don't think I'm bound to respond to his question.
 "THE COURT: Mr. Knight — I will ask the questions if you want me to.
"MR. TATUM: No, Your Honor, I —
 "THE COURT: You hush, "Do you know of any receipts Mr. Ogle signed?
"WITNESS: Not to the best of my knowledge.
"THE COURT: Go ahead."
Although these manifestations of impatience by the trial court may be in bad taste, they do not constitute error because the court subsequently charged the jury that any comments it made to an attorney in the case were not expressions by the court or a belief in Morgan's guilt of the crime charged:
 "Nothing that I have said or done, no comment, no facial expression, no gesture, *Page 1320 
no statement to counsel, nothing I may have said to any attorney, has been designed to suggest to you what I believe about what a fair verdict in this case would be. I have no opinion as to the facts of this case, and I do not want you to think in any way from anything that I have said during the course of the trial or anything that I have said in this charge so far or may say later, that I think one way or the other about the evidence, the facts, or the outcome of this trial."
See Oglen, supra, at 1175 (trial judge's direction to defense counsel not to "browbeat" the victim on cross-examination did not improperly prejudice defendant).
Morgan, moreover, cannot complain that her cross-examination of Knight was restricted when defense counsel attempted towithdraw a question which had already been answered — the trial court merely asked that the answer be repeated for clarification.
During Morgan's cross-examination of Lamar Miller, the trial court properly refused to allow an exhibit to be admitted into evidence and published to the jury, because the exhibit was not relevant to the expert's opinion as to the handwriting of the red-ink entries in the board's receipt books. Likewise, when defense counsel's questions to this expert became very confusing, the trial court properly interrupted the cross-examination to allow the expert to explain the format of his report to the jury. At the close of this detailed explanation, the trial court permitted defense counsel to continue his cross-examination with no resulting prejudice to Morgan.
With respect to Morgan's cross-examination of Kathy Chambless, the trial court did not restrict cross-examination when it asked the witness whether she actually knew what materials were turned over to defense counsel pursuant to the discovery order.
With respect to Morgan's cross-examination of Doris McAdams, the trial court properly sustained the state's objection to defense counsel's attempts to circumvent a pretrial order wherein counsel agreed that only the outcome of the Equal Employment Opportunity Commission (EEOC) investigation brought by Morgan and others against the parks and recreation board would be relevant in Morgan's criminal trial.
 III
Morgan contends that the prosecution's use of four leading questions on direct examination constitutes reversible error. Defense counsel's failure to object to the form of three of the questions at trial precludes our review on appeal. Dixon v.State, 476 So.2d 1236 (Ala.Cr.App.), cert. denied,476 So.2d 1236 (Ala. 1985). Defense counsel's objection at trial to the fourth question based on the form of the question was madeafter the question was answered by the witness and was therefore untimely. A timely objection is a condition precedent to assigning the admission of an answer as grounds for error on appeal. C. Gamble, McElroy's Alabama Evidence § 426.01(3).
 IV
Morgan contends that the trial court committed reversible error by 1) allowing the prosecutor to question the witness, Tommy Knight, concerning Morgan's suspension from her job for allegedly falsifying information on her job application, and 2) allowing witnesses to testify regarding findings of fact in the EEOC investigation. We disagree.
The appellant cannot complain about exploration of an issue which the appellant injected into trial. Morgan v. State,440 So.2d 1240 (Ala.Cr.App. 1983). "Where a matter has been gone into by one party to a cause, the other party has the right to explain away anything, if he can, that may have been brought out to his detriment." Wyrick v. State, 409 So.2d 969, 975
(Ala.Cr.App. 1981), cert. denied, 409 So.2d 969 (Ala. 1982). A defendant is not permitted to present evidence to the jury on a specific issue and object when the state attempts to introduce evidence on the same point. Billingsley v. State,402 So.2d 1052 (Ala.Cr.App. 1980), rev'd on other *Page 1321 
grounds, 402 So.2d 1060 (Ala. 1981), cert. denied,465 U.S. 1023, 104 S.Ct. 1276, 79 L.Ed.2d 681 (1984). If illegal evidence is introduced by one party and admitted, the state has a right to introduce illegal evidence in rebuttal, even though the opponent failed to object to the initial introduction of the illegal evidence. Morgan, supra, 440 So.2d at 1241.
The record clearly shows that Morgan's attorney opened the door to a legitimate inquiry as to the reason surrounding the Morgan's suspension from her job. By implying on the cross-examination of Penn Woods (the mayor of the City of Jasper), and Jimmy Vann (an investigator with the Jasper Police Department), that Morgan was being accused of taking funds belonging to the city because Morgan had filed a race discrimination suit against the city, Morgan opened the door for the state to show that the city was not motivated by ulterior reasons and that Morgan had been suspended for matters unrelated to the theft of the money.
Moreover, by presenting as a defense that the City of Jasper had accused Morgan of taking funds belonging to the city in retaliation for a race discrimination suit filed by Morgan against the city, Morgan opened the door for the state to show the outcome of the EEOC investigation and hearings. Morgan cannot therefore complain about the exploration of issues which she herself improperly injected into the trial.
 V
Morgan contends that the state's proof was insufficient to support a judgment of restitution and that the trial court erred in denying her request for probation.
The particular amount of restitution in a case is a matter which must of necessity be left almost totally to the discretion of the trial judge — that discretion should not be overturned except in cases of clear and flagrant abuse. Clarev. State, 456 So.2d 355 (Ala.Cr.App. 1983), aff'd, 456 So.2d 357
(Ala. 1984).
On the day Morgan was sentenced, the court ordered Morgan to pay restitution in the amount of $6,500.00. Morgan asked the court to set aside this order and set the matter for hearing. The court suspended its restitution order and held a hearing. The state presented a witness who testified that the amount of restitution due the city in this case ($13,835.52), and Morgan elected not to put on testimony on rebuttal to challenge the amount in question. Thus, the court's amended order requiring Morgan to pay restitution in the amount of $13,835.52 was based on sufficient uncontroverted evidence by the state. This order will not be overturned on appeal.
The original grant or denial of probation is entirely within the discretion of the trial court and is not reviewable upon appeal from a judgment of conviction. Section 15-22-50, Code of Alabama 1975. Thus, the denial of Morgan's probation is not reviewable by this court.
The foregoing opinion was prepared by JAMES H. FAULKNER, a Retired Justice, Supreme Court of Alabama, serving as a judge of this court, and his opinion is adopted as that of this court.
AFFIRMED.
All the Judges concur.