Broderick Tyrone Rutledge, the appellant, was convicted of robbery in the first degree and sentenced to 20 years' imprisonment. He raises three issues on this direct appeal from that conviction.
 I
The appellant contends that the prosecutor violated the principles of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712,90 L.Ed.2d 69 (1986), and Ex parte Branch, 526 So.2d 609 (Ala. 1987), in striking veniremember A.B. The prosecution struck three of the nine blacks on the jury venire. Six blacks served on the 13-member jury. The prosecutor's reason for striking all three blacks, including A.B., was because "they were sitting on Judge Pearson's case this week where it was a[n acquittal] — and we talked to the prosecutor on that case and it was a robbery and it was a very good case and he asked them all can you base it on an eyewitness and they all said they could. And then they came back and said they needed something more than eyewitness testimony." R. 9-10. The prosecutor informed the trial court that A.B. "refused to talk to the prosecutor [in the other case] at all." R. 11.
The prosecution also struck a white veniremember who had served on that jury. The defense struck the remaining veniremember who had served on that prior jury and who was white. The trial judge found that "the State has given race neutral reasons for striking the black males on the jury." R. 13.
The fact that a veniremember served on a jury that returned a not guilty verdict or that was unable to return a verdict has been held to be an acceptable reason for striking that veniremember. E.g., Childers v. State, 607 So.2d 350, 352-53
(Ala.Cr.App. 1992) (veniremember previously served on jury that returned a not guilty verdict), affirmed as to this issue, reversed on other grounds, 640 So.2d 16 (Ala. 1994); Powell v.State, 608 So.2d 411, 413 (Ala.Cr.App. 1992) (veniremember previously served on a jury that was unable to reach a verdict and on another jury that returned a not guilty verdict);Whittlesey v. State, 586 So.2d 31, 32 (Ala.Cr.App. 1991) (three veniremembers had previously served on juries that returned not guilty verdicts or that were unable to reach a verdict);Watkins v. State, 551 So.2d 421, 422-23 (Ala.Cr.App. 1988) (one veniremember previously served on a jury that returned a not guilty verdict; another veniremember had previously served on two juries, one criminal, one civil, both of which were unable to return a verdict).
 II
The appellant contends that his confession should have been suppressed because it was the product of a promise to drop other cases against him. He also asserts that his mother, "fearful that [he] would be charged with additional robberies, used physical violence to coerce [him] into making a statement of 'what [the police] want to know.' " Appellant's brief at 8.
The robbery for which the appellant was tried occurred at a convenience store on the night of December 21, 1992. The 18-year-old appellant was questioned about this robbery at a Birmingham police station on the morning of February 5, 1993. It appears that police officers transported him in a police car from the apartment he resided in with his mother to the police station. The appellant's mother, Barbara Rutledge Arnold, followed in her own car.
At the police station, the appellant was questioned by Detective Cedrick Stevens and Lieutenant John Fisher. The evidence is undisputed that the appellant initially voluntarily waived his constitutional "juvenile Miranda rights"[1] after which he gave a statement characterized by Detective Stevens as a "denying statement" in which he denied any involvement in the robbery. At that point, the appellant's mother was not in the interrogation room; she had not been in the interrogation room at any time previously. Detective Stevens testified that the appellant did not ask for his mother to be present. *Page 1144 
After the appellant made the "denying statement," the officers, apparently one at a time, talked with the appellant's mother. It appears that both officers showed her photographs taken by a security camera in the store in which the robbery occurred. She identified the appellant as one of the people in the photographs. See Part III of this opinion.
Ms. Arnold testified that the officers told her that they suspected that the appellant was involved in two other robberies at the same convenience store. She testified that one of the officers told her that because she "was so cooperative" he was going to charge the appellant with only one robbery instead of three. R. 46-47. Detective Stevens admitted telling Ms. Arnold that he believed the appellant was involved in two other robberies at the convenience store, but he categorically denied making any promise or any statement to the effect that if the appellant would confess to one robbery, he would not be charged with the other two robberies. Lieutenant Fisher could not recall if he knew of the other robberies, but denied that he made any promise to either the appellant or to Ms. Arnold with regard to the appellant's confession.
After the police talked with Ms. Arnold, she was permitted to speak with the appellant. Ms. Arnold testified:
 "Broderick kept saying he don't know what he's talking about, so I hit Broderick up side the head. . . . And his nose started bleeding. I told him he better tell people what they want to know because you going to be in more trouble than you already is, because [the officer] said you have two or three more robbery cases on you." R. 144-45.
Ms. Arnold said that she told the appellant "he better go on and tell because if they going to throw one [sic] out, that would leave just one." R. 49. She also stated that when she struck the appellant, "the detective told [her she] couldn't do that in there because of child abuse." R. 45.
Detective Stevens testified that when he returned to the interrogation room with the appellant's mother, he asked the appellant,
 " 'Do you still continue saying the same thing?' [The appellant] said he didn't know . . . nothing about the robbery, he was still saying that. . . . Then she stepped in and said, 'Well, you need to tell the truth, because I saw you, saw a picture of you in the store.' . . . [Then] he started kind of pouting or something and she was telling him that she d[id]n't understand why he would do stuff like that, brother already went to jail before. And basically that's when he said he wanted to talk but he didn't want her to be in there." R. 36-37.
Stevens stated that Ms. Arnold told her son that he "needed to tell the truth." R. 126. Stevens testified that the appellant then stated that he wanted to talk, but he said that "he would rather for her not to be in there when he made his statement." R. 26. Ms. Arnold then left the room and the appellant admitted his involvement in the robbery.
 A
"Confessions that are the result of express or implied promises are not voluntary and must be excluded from the jury's consideration." Wyatt v. State, 620 So.2d 77, 78 (Ala.Cr.App. 1992). A direct and substantial promise to drop other cases against the defendant is sufficient to require exclusion of a confession obtained by that promise. See Holmes v. State,598 So.2d 24, 27-28 (Ala.Cr.App. 1992).
In the present case, however, the evidence concerning the alleged promise to drop other cases against the appellant was in sharp conflict: The appellant's mother testified that the promise was made by the officers to her and was communicated by her to the appellant, while both of the officers who questioned the appellant flatly denied that any inducements of any kind were offered to the appellant or to his mother. "[C]onflicting evidence given at [a] suppression hearing presents a credibility choice for the trial court." Atwell v. State,594 So.2d 202, 212 (Ala.Cr.App. 1991), cert. denied, 594 So.2d 214
(Ala. 1992). "[A] trial court's ruling based upon conflicting evidence given at a suppression hearing is binding on this Court, and is not to be reversed absent a clear abuse of *Page 1145 
discretion." Jackson v. State, 589 So.2d 781, 784 (Ala.Cr.App. 1991) (citations omitted). We find no abuse of discretion with regard to the trial court's decision on the inducement aspect of the appellant's claim.
 B
Ms. Arnold's testimony that she "hit Broderick up side the head" and "his nose started bleeding" stands uncontroverted. Neither Detective Stevens nor Lieutenant Fisher were questioned by the prosecutor or defense counsel concerning Ms. Arnold's physical abuse of the appellant and neither officer denied or confirmed that the abuse occurred.
According to Professor Ringel:
 "A confession induced by actual violence against the suspect must be suppressed whether the person who elicits the statement is a governmental official, a private citizen, or even a non-human. The law attaches no significance to the source of the violence, it is the existence of coercion that undermines the reliability of the confession."
3 W. Ringel, Searches Seizures, Arrests Confessions § 25.2(a) n. 7 (1991). However, the only case cited in support of this proposition that involved violence by private citizens,State v. Rinebold, 702 S.W.2d 921 (Mo.App. 1985), was decided prior to the United States Supreme Court's decision in Coloradov. Connelly, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473
(1986).
In Connelly, the defendant approached a uniformed police officer in Denver, Colorado, and, "without any prompting, stated that he had murdered someone and wanted to talk about it." 479 U.S. at 160, 107 S.Ct. at 518. Although the defendant had a history of mental problems, he appeared lucid and, after being informed of his Miranda rights, confessed to a murder. The next day, "he became visibly disoriented," "began giving confused answers to questions, and for the first time, stated that 'voices' had told him to come to Denver and that he had followed the direction of these voices in confessing."479 U.S. at 161, 107 S.Ct. at 518. The Colorado trial court suppressed this confession, finding that although "the police had done nothing wrong or coercive in securing [defendant's] confession, [defendant's mental] illness destroyed his volition and compelled him to confess." 479 U.S. at 162, 107 S.Ct. at 519. The case ultimately made its way to the United States Supreme Court, which made it clear that, with regard to the admissibility of confessions, the Due Process Clause of the Fourteenth Amendment is directed to action by the state, andnot to action by private citizens:
 "Our 'involuntary confession' jurisprudence is entirely consistent with the settled law requiring some sort of 'state action' to support a claim of violation of the Due Process Clause of the Fourteenth Amendment. The Colorado trial court, of course, found that the police committed no wrongful acts, and that finding has been neither challenged by [defendant] nor disturbed by the Supreme Court of Colorado. The latter court, however, concluded that sufficient state action was present by virtue of the admission of the confession into evidence in a court of the State.
 "The difficulty with the approach of the Supreme Court of Colorado is that it fails to recognize the essential link between coercive activity of the State, on the one hand, and a resulting confession by a defendant, on the other. The flaw in [defendant's] constitutional argument is that it would expand our previous line of 'voluntariness' cases into a far-ranging requirement that courts must divine a defendant's motivation for speaking or acting as he did even though there be no claim that governmental conduct coerced his decision.
 "The most outrageous behavior by a private party seeking to secure evidence against a defendant does not make that evidence inadmissible under the Due Process Clause."
479 U.S. at 165-66, 107 S.Ct. at 521 (citations omitted). The Court concluded: "We hold that coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." 479 U.S. at 167, 107 S.Ct. at 522
(emphasis added). Connelly makes it clear that " [c]onduct by third parties not connected *Page 1146 
with the law enforcement officers in the investigation will not vitiate a confession which might be rendered incompetent and inadmissible if such conduct had been committed by a law enforcement officer." Darghty v. State, 530 So.2d 27, 31 (Miss. 1988).
In State v. Rinebold, the pre-Connelly case cited by Professor Ringel, an accused rapist was hit and kicked by the victim's husband and was then ordered by the husband to apologize to the victim and to thank the officers who had arrived on the scene for arresting him. When asked by the husband's mother, who was also present, "why he raped his own cousin," the accused replied, " 'I don't know, I think I'm sick, I need help.' " 702 S.W.2d at 923. The Missouri Court of Appeals for the Southern District held that the apology to the victim and the thanks given to the police officers were coerced by the husband's actions and that the admission to the husband's mother was not sufficiently attenuated from the coercion that produced the involuntary statements to render it voluntary. The court stated: "[A]n admission or confession, the product of the use of or threat to use physical violence by a private citizen, [must] be excluded from evidence." Id. at 925.
Following the Supreme Court's decision in Connelly, the Missouri Court of Appeals for the Western District foundRinebold "to be invalid and not binding upon th[e] court as a viable precedent because of the ruling in Connelly." State v.Ferrell, 741 S.W.2d 712, 716 (Mo.App. 1987). In Ferrell, the defendant was arrested by the resident of the house he was attempting to burglarize, and he thereafter made incriminating statements to the resident. While there was no evidence that the resident employed "either physical or psychological coercion," the court clearly indicated that, had there been such evidence, Connelly would be controlling. Ferrell, 741 S.W.2d at 715-16. See also Darghty v. State, 530 So.2d at 31 (alleged promise by defendant's wife that charges would be reduced if defendant would confess and sign automobile title over to her did not render defendant's confession inadmissible).
Connelly is also controlling in this case, where the alleged physical abuse was committed by the appellant's mother, rather than police officers. Although the incident occurred at the police station, there was absolutely no evidence that Ms. Arnold was acting as an agent of the police. Compare Arizona v.Fulminante, 499 U.S. 279, 283, 287 n. 4, 111 S.Ct. 1246, 1250,1253 n. 4, 113 L.Ed.2d 302 (1991) (where third party who obtained confession was "a paid informant for the Federal Bureau of Investigation," and was instructed "to find out more" about defendant, third party "acted as an agent of the Government when he questioned [defendant] about the murder"). It does not appear that the officers asked Ms. Arnold to come to the station or that they even asked Ms. Arnold to talk to the appellant, much less that they encouraged her in any manner to obtain a confession through physical abuse. In fact, Ms. Arnold herself testified that after she had struck the appellant, she was told by the officers that such behavior was not permitted. Furthermore, Ms. Arnold admitted on cross-examination that once she had been shown the photographs taken by the store security camera, when she "saw [the appellant, she] got mad enough that [she] slapped him." R. 152. Under the particular circumstances of this case, there simply was no "coercive police activity" involved; consequently, the appellant's confession was not involuntary for purposes of the Due Process Clause of the Fourteenth Amendment. Connelly,479 U.S. at 167, 107 S.Ct. at 522.
While we hold that the confession in this case was admissible, we observe that there may be cases where the facts surrounding the confession shocks the judicial conscience and warrants the suppression of the confession. Cf. United Statesv. Mitro, 880 F.2d 1480, 1483 (1st Cir. 1989) (evidence seized by foreign officials under circumstances that shock the judicial conscience may be suppressed). This, however, is not such a case.
 III
The appellant maintains that the State failed to present sufficient evidence to support his conviction. Specifically, he argues that the identification evidence was insufficient *Page 1147 
to prove that he was involved in the robbery.
The State called only two witnesses during its case-in-chief: Keith Williams and Detective Cedrick Stevens. Williams testified that on the night of December 21, 1992, he was working as a cashier at a convenience store located on Highway 78 in Jefferson County. He stated that around 10:30 p.m., three masked men entered the store and ordered him at gunpoint to open the cash drawer of the register. Williams said that after he opened the drawer one of the men removed money from the cash drawer, including the "dummy money," which "activate[d] the alarm and start[ed] the [security] camera to snapping pictures." R. 80. The men also took cigarettes, beer, and milk from the store. While Williams stated that the appellant lived in the neighborhood and "used to come in [the store] quite a lot," R. 90, he was unable to identify the appellant as one of the men who had robbed him. He did, however, identify State's Exhibits 3 and 4 as photographs taken by the security camera depicting two of the masked men who committed the robbery. He also stated that he had been told that the appellant was one of the robbers.
Detective Stevens testified that the appellant gave a tape-recorded statement in which he admitted committing the robbery. See Part II of this opinion. This tape-recorded statement was played for the jury. He also testified that on February 5, 1992, he showed State's Exhibits 3 and 4 to the appellant's mother, who positively identified one of the masked men as the appellant.
Detective Stevens acknowledged on cross-examination that the appellant had said in his statement that he had only one gun during the robbery although the photographs taken by the store's security camera showed the robber alleged to be the appellant with two guns. He also acknowledged that there was a discrepancy between the type of mask the appellant said he had worn during the robbery and the type of mask shown in the photograph. However, Stevens stated that he thought the appellant "said he really [did not] remember what he wore." R. 126.
The appellant's mother, Barbara Rutledge Arnold, was the only witness called by the defense. She testified that an officer had shown her State's Exhibits 3 and 4 and two other photographs. She indicated that she could not identify either of the people depicted in State's Exhibits 3 and 4, but stated that, when shown the other set of photographs, she had said that one of the individuals "looks like" the appellant. R. 151-52.
The State called Detective Stevens as a rebuttal witness. Stevens testified that the only pictures he had shown Ms. Arnold were State's Exhibits 3 and 4. He stated that Ms. Arnold was looking at a picture of "[t]he [man] with the mask hanging half down" when she positively identified that man as the appellant. R. 158.
In a criminal prosecution, the State must prove beyond a reasonable doubt both 1) "each and every element of the offense charged" and 2) "that the accused committed the crime." Hull v.State, 607 So.2d 369, 373 (Ala.Cr.App. 1992). In the present case, Keith Williams' testimony was clearly sufficient to establish the elements of the offense of robbery in the first degree. See Ala. Code 1975, § 13A-8-41(a)(1). With regard to the question of identity, although Williams could not identify the appellant as one of the men who robbed him, he testified without objection that he had been told that the appellant was one of the robbers. Detective Stevens testified that the appellant's mother positively identified one of the masked men in the photographs taken by the store's security camera as the appellant.
Both Williams' and Stevens' testimony regarding identification of the appellant was rank hearsay. SeeThomas v. State, 461 So.2d 16, 20-21 (Ala. 1984). While it appears that Williams' identification of the appellant is being challenged on that ground on appeal,[2] there was no objection whatsoever *Page 1148 
to this testimony at trial. Consequently, the issue of the admissibility of that testimony was not preserved for our review.
The admission of Stevens' testimony concerning the identification of one of the masked men by the appellant's mother is not challenged on appeal. We observe, however, that the following occurred during the prosecution's re-direct examination of Stevens:
 "Q. And which one of the people [in State's Exhibits 3 and 4] did she identify as being [the appellant]?
"A. The guy —
"[DEFENSE COUNSEL]: I object, Your Honor, hearsay.
 "THE COURT: Well, I don't know what to say. I'll sustain.
 "Q. Did she identify one of the people in this picture —
"A. Yes.
"Q. — as being [the appellant]?
"A. Yes.
"Q. And she said, 'That's [the appellant]?'
"A. Yes."
R. 132.
"[A]n adverse ruling by the trial court . . . is a preliminary requirement to preservation of error for appeal."Bradley v. State, 577 So.2d 541, 555 (Ala.Cr.App. 1990). Accord, e.g., Nept v. State, 589 So.2d 801 (Ala.Cr.App. 1991);Leonard v. State, 551 So.2d 1143, 1146 (Ala.Cr.App. 1989). Where, as in this case, the trial court sustains the defendant's objection there is "no adverse ruling and nothing is preserved for our review." Rice v. State, 611 So.2d 1161,1164 (Ala.Cr.App. 1992). Accord McArthur v. State,591 So.2d 135, 139 (Ala.Cr.App. 1991), cert. denied, 601 So.2d 218 (Ala. 1992).
Moreover, defense counsel elicited this very same testimony during cross-examination of Stevens. R. 119-20. Where a defendant elicits hearsay testimony from a State's witness on cross-examination, he cannot be heard to complain when the State elicits that same testimony on re-direct examination. SeeShaneyfelt v. State, 494 So.2d 804, 807-08 (Ala.Cr.App. 1986). "A defendant is not permitted to present evidence to the jury on a specific issue and object when the state attempts to introduce evidence on the same point." Morgan v. State,589 So.2d 1315, 1320 (Ala.Cr.App. 1991).
Because there was no objection to Williams' testimony that he had been told that the appellant was one of the robbers and no adverse ruling on the inappropriate objection to Stevens' testimony that the appellant's mother had positively identified one of the masked men depicted in State's exhibits 3 and 4, "the entire testimony of th[ose] witness[es] remain[ed] with the jury." Watson v. State, 398 So.2d 320, 325 (Ala.Cr.App. 1980), cert. denied, 398 So.2d 332 (Ala.), cert. denied,452 U.S. 941, 101 S.Ct. 3085, 69 L.Ed.2d 955 (1981).
 "To preserve error there must be a timely and appropriate objection prior to the witness's answer to a question or a motion to exclude the answer. . . . Hearsay evidence which is admitted without objection becomes lawful evidence. 'The fact that evidence which is introduced in a case may be, if objected to, incompetent evidence under some one or more exclusionary rules of evidence does not destroy its probative effect, if it is admitted without objection.' "
Id. at 324-25 (citations omitted) (emphasis added).
The testimony of Williams and Stevens was sufficient evidence from which the jury could conclude that the appellant committed the robbery. The conflicting evidence presented by the appellant's mother on the matter of her identification of the appellant and the discrepancies between the appellant's statement and the facts as shown by the State merely presented questions of fact and credibility of witnesses to be resolved by the jury. See, e.g., Brown v. State, 588 So.2d 551, 559
(Ala.Cr.App. 1991) ("the resolution of conflicting testimony [is] for the jury's determination"); Waddle v. State,473 So.2d 580, 582 (Ala.Cr.App. 1985) ("where there is a conflict in the evidence, the inferences to be drawn from the evidence, the weight of the evidence, and the credibility of the witnesses are all questions for the jury"). *Page 1149 
For the reasons stated above, the judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
[1] See Rule 11(A), A.R.Juv.P.
[2] The appellant does not use the word "hearsay" in his argument. He alleges only that "Williams has no independent knowledge that the [appellant] was one of the men who came into the store. His testimony regarding identification is based solely on what the police and district attorney's office told him." Appellant's brief at 10.