DICKINSON, Presiding Justice,
dissenting:
¶ 59. Because the State violated both the rules of discovery and Cecil Ben’s Sixth-Amendment right to a speedy trial, his conviction should be reversed. I respectfully dissent.

Right to a speedy trial

¶ 60. If there is any consistency in this Court’s speedy-trial precedent, it is not in why defendants lose; it is in the historical certainty that — for one reason or another — the defendants will lose.[5]
*1255 ¶ 61. For instance, we previously have announced that defendants will lose the third Barker[6] factor (assertion of the right to a speedy trial) where, rather than filing motions for speedy trials, they filed motions to dismiss for failure to provide a speedy trial.[7] So in today’s case, just sixty-one days following his indictment, the defendant did file a motion for a speedy trial. But the majority says he loses anyway because, according to the majority, he wasn’t really seeking a speedy trial. Never mind that, prior to the date his indictment was handed down, Ben had nowhere to file a motion for speedy trial. For clarity and emphasis, I restate that Ben filed a motion for a speedy trial sixty-one days after the State had provided him a place to file it.
¶ 62. There’s more. Some days, we cite with approval, and give credence to, the United States Supreme Court’s characterization of a defendant’s failure to demand a speedy trial as “one of the factors to be considered” (implying that other factors will be considered). And we have agreed with the utter rejection of the notion that a defendant who “fails to demand a speedy trial forever waives his right.”[8]
¶ 63. But on other days (like today), when a case comes along where all three of the other Barker factors weigh in a defendant’s favor (and it appears the defendant might actually win one of these pesky speedy-trial motions), the single Barker factor — whether the defendant demanded a speedy trial — suddenly becomes a threshold, outcome-determinative, litmus test. I have no doubt that, should a defendant come along who indisputably wins all four Barker factors, this Court will feel compelled to improve on Barker and come up with a fifth factor. Despite what the United States Supreme Court might think, in Mississippi, a defendant who fails to demand a speedy trial DOES forever waive his right. Again, never mind that in this case, Ben did demand a speedy trial just sixty-one days after it became possible for him to do so.
¶ 64. The majority readily admits that three of the four Barken[9] factors weigh in Ben’s favor. In fact, the majority recognizes that Ben was actually prejudiced by the State’s unexplained and presumptively-prejudicial delay. I pause here to point out — as I did in Johnson v. State — that, where prejudice is presumed and unrebut-ted, there should be no need for the Court to look for actual prejudice.[10] What is the point of presuming that something is so if you are going to ignore the presumption and require that it be proved? But to be clear, I agree with the majority that actual prejudice existed here.
¶ 65. So it is now clear. In Mississippi, winning three of the four Barker factors— including a demonstration of actual prejudice — is not enough. Today, this Court announces for the first time that a defendant who did not demand a speedy trial will lose. And not only that, but where the defendant actually does demand — in writing — a speedy trial, the majority must be *1256 subjectively persuaded that the defendant was really demanding a speedy trial.
¶ 66. The truth is, Ben won all four Barker factors — including the assertion of his right. Prior to being indicted, Ben was not eligible to be tried, speedily or otherwise. The circuit court — the only entity capable of giving Ben a speedy trial— didn’t even have a file on him. After he was indicted, he filed his motion for a speedy trial within a reasonable time. The majority says Ben should have filed his motion for a speedy trial much earlier. But how — and where?
¶ 67. It seems odd that the majority, which finds sixty-one days too long for Ben to take to demand a speedy trial, is the same majority that has no problem when it takes the State almost four years (1,430 days) following indictment to actually give a defendant a trial.[11] And in Jenkins v. State, we rejected a speedy-trial claim where the State waited almost two years (626 days) to bring the defendant to trial.[12]
¶ 68. My point in citing these cases is not to say that 626 days or 1,430 days is necessarily too long to bring a defendant to trial (I concurred in both), but to point out the double standard in this Court saying that sixty-one days is too long for a defendant to wait to file a motion for a speedy trial. After all, it took the State more than a year following Ben’s arrest to indict him. We are not told why the State waited more than a year to seek an indictment, but it did. And the fact that the speedy-trial clock was running during that year is not debatable.
¶ 69. In 2005 (my second year on this Court) I wrote: “[wjhile it is the State’s burden to bring an accused to trial, we have held that a defendant’s failure to assert his right to a speedy trial must be weighed against him.”[13] Because I now do not agree with that statement, I take this opportunity to reject it, and to explain why I made it.
¶ 70. I could simply say the statement was technically correct, that is, this Court had in fact held that a defendant’s failure to assert his right to a speedy trial must be weighed against him. But I was wrong to rely on that precedent. I should have pointed out, and followed, the numerous other cases (including Barker, itself) that say “a defendant has no duty to bring himself to trial.”[14] I did not know then— but have since learned — that this Court’s precedent on some issues (such as speedy trial) is quite mercurial. Sadly, the majority of this Court ignores one of the most important points made by the Barker Court: “[Sjociety has a particular interest in bringing swift prosecutions, and society’s representatives are the ones who should protect that interest.”[15]
¶ 71. Back in the days when Mississippi still recognized the right to a speedy trial, there came a case (like the one before us today) where three of the four Barker factors weighed against the State, and one against the defendant. In reversing the conviction, this Court held that the three factors that weighed in favor of the defendant “must ” outweigh the one factor that weighed in favor of the State “if the Barker and Bailey[16] holdings that no one *1257 factor is dispositive are to have any meaning at all.”[17]
¶ 72. And in more recent days, this Court often dutifully chants the magic language: “no one [Barker] factor is dispos-itive” — but always, it seems, in cases where it is safe to do so, that is, cases where at least two Barker factors weighed in favor of the State,[18] rendering the phrase irrelevant. In the very same year I penned Stark (2005), this Court — without a single dissent — reaffirmed the great truth: “In the end, no one Barker factor is dispositive.” [19] But in that case, no one Barker factor needed to be dispositive because two of them weighed in favor of the State. And if Benjamin Franklin needed a third example to add to “death” and “taxes” he certainly could have added the denial of a speedy-trial claim (in Mississippi since 1992)[20] where the State wins two Barker factors.
¶ 73. In Jenkins v. State, decided the following year (2006), one Barker factor was neutral, two weighed in favor of the defendant, and the fourth — prejudice to the defendant — went to the State because the only prejudice the defendant could show was that he was incarcerated for nearly two years and, when his trial finally was scheduled, he was unable to locate a witness. This Court — again, without a single dissent — stated:
Under the Barker test, courts must balance: (1) the length of the delay, (2) the reason for the delay, (3) whether the defendant asserted his right to a speedy trial, and (4) whether the defendant was prejudiced by the delay. No one factor is dispositive.[21]
¶ 74. Now comes today’s case in which three Barker factors weigh in favor of the defendant. When I received the majority’s opinion, I recalled Burgess, in which this Court held that three factors that weigh in favor of the defendant “must” outweigh the factor that weighed in favor of the State “if the Barker and Bailey[22] holdings that no one factor is dispositive are to have any meaning at all.”[23]
¶ 75. With Burgess (and all the other cases that say “no one factor is disposi-tive”) in mind, I searched the majority opinion for the phrase, “no one factor is dispositive.” My search was understandably in vain. I say understandably because the majority opinion today makes one factor dispositive.
¶ 76. Instead of holding the State to its constitutional obligation — which the majority would have to have done, had it followed the principle of “no one factor is dispositive” — the majority engaged in an impressive display of legerdemain. It morphed “no one factor is dispositive” into “[njone are a necessary or sufficient condition to the finding of a deprivation of the *1258 right of to a speedy trial.” It is enough to say that I do not see how this phrase is even relevant to this case.
¶ 77. The “elephant-in-the-room” truth, of course, is that no defendant is going to prevail in this Court on a speedy-trial claim. One wonders why the State bothers briefing the issue, and why the majority even cites or discusses Barker. The burden required by the majority for a defendant to access this important constitutional right is impossible.
¶ 78. In this case, all four Barker factors weighed in Ben’s favor. But, even accepting the majority’s analysis that only three weighed in Ben’s favor, the trial judge should have dismissed the case. Since that did not happen, this Court should recognize that the State violated Ben’s Sixth-Amendment right to a speedy trial. I have difficulty finding fault with our trial judges, who hardly can be expected to begin enforcing a constitutional right this Court does not appear to believe exists. The error falls here. For these reasons, I would reverse this Court’s trend of ignoring a defendant’s right to a speedy trial.

Discovery violation

¶ 79. Our rules require the State “to disclose to each defendant ... the names and addresses of all witnesses ... and the substance of any oral statement made by any such witness.”[24] And when the prosecution attempts to introduce undisclosed evidence at trial, the rule clearly says that the trial judge shall
[gjrant the defense a reasonable opportunity to interview the newly discovered witness” and “[i]f, after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continuance or mistrial, the court shall, in the interest of justice and absent unusual circumstances, exclude the evidence or grant a continuance.[25]
¶ 80. At trial, when Mingo began to testify about a sexual comment Ben allegedly had made about Monica, Ben objected, but the trial judge overruled Ben’s objection. Curiously, after noting that the State had failed to disclose Mingo’s testimony, the trial judge did not allow Ben to interview Mingo, as required by Rule 9.04(1). So Mingo continued with his testimony.
¶ 81. After the State failed to disclose the substance of Mingo’s expected testimony, the trial judge failed to do what the rule says it “shall” (no discretion) do. The majority readily agrees that the trial judge committed error. But, according to the majority, when looking at “the entirety of the record, including the physical evidence, Monica’s testimony, and the fact that Min-go was identified as a witness months before trial,” the error was harmless. I disagree.
¶ 82. While the State complied with the part of the rule that required it to identify Mingo as a witness, it did not comply with the part that required it to inform Ben of the substance of the witness’s statement and expected testimony. Using the majority’s logic, it is acceptable to violate our rules, so long as you don’t violate them all.
¶ 83. Mingo’s testimony was critical; it established motive. The jury — upon hearing Mingo’s testimony that Ben allegedly said: “That stuff looks real good” — easily could have interpreted the statement as Ben’s intention to have sex with Monica. And Mingo’s alleged statement that he told Ben, “whatever you’re thinking, stop it. She’s a young lady,” and “comments like that shouldn’t be made from a professional level,” clearly conveyed to the jury *1259 that Mingo was of the opinion that Ben intended to commit a rape. Ben was clearly entitled to advance notice that Min-go had made these statements, and was expected to testify to them at trial. It is difficult to imagine statements more applicable to Rule 9.04(1).
¶ 84. The majority concedes that Ben’s alleged remarks to Mingo showed that Ben was sexually attracted to Monica. But, says the majority, no harm, no foul, because Ben’s statements didn’t necessarily lead to sex, forcible or otherwise. If a weaker justification has ever been offered for overlooking the State’s violation of our rules, I have not heard it.
¶ 85. Up until today, this Court has reversed every case in which a trial judge failed to follow Rule 9.04(I).[26] The majority’s failure to do so today is yet another step backward from this Court’s duty to insure that both the State — and the accused — get a fair trial. I am disappointed that we do not enforce our rules evenhandedly. I respectfully dissent.
KITCHENS, CHANDLER AND KING, JJ„ JOIN THIS OPINION.

. See generally Johnson v. State, 68 So.3d 1239 (Miss.2011) (Dickinson, P.J., dissenting).

. Barker v. Wingo, 407 U.S. 514, 528, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

. See e.g. Perry v. State, 637 So.2d 871, 875 (Miss.1994) (citing Adams v. State, 583 So.2d 165 (Miss.1991)).

. Barker v. Wingo, 407 U.S. 514, 528, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). See e.g. Thomas v. State, 48 So.3d 460, 476 (Miss.2010) (citing Jefferson v. State, 818 So.2d 1099, 1107-108 (Miss.2002); Brengettcy v. State, 794 So.2d 987, 994 (Miss.2001)) (internal quotations omitted).

. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

. Johnson v. State, 68 So.3d at 1247 (Dickinson, P.J., dissenting, joined by Waller, C.J.).

. See Manbc v. State, 895 So.2d 167 (Miss.2005).

. See Jenkins v. State, 947 So.2d 270 (Miss.2006).

. Stark, 911 So.2d at 452 (emphasis added) (citations omitted).

. Barker, 407 U.S. at 527, 92 S.Ct. 2182.

. Id.

. Bailey v. State, 463 So.2d 1059 (Miss.1985).

. Burgess v. State, 473 So.2d 432, 434 (Miss.1985) (emphasis added) (citing Bailey, 463 So.2d at 1059 (Miss.1985)).

. See, e.g., Poole v. State, 826 So.2d 1222, 1229-30 (Miss.2002) (emphasis added).

. Price v. State, 898 So.2d 641, 648 (Miss. 2005) (emphasis added).

. Johnson v. State, 68 So.3d 1239, 1248 (Miss.2011). (Dickinson, P.J., dissenting) ("[i]n the fifty-eight [speedy trial] cases decided [in Mississippi] since 1992, this Court has not found a single violation.”). NOTE: Johnson was decided a year ago, and the record still holds.

. Jenkins v. State, 947 So.2d 270, 276 (Miss.2006) (emphasis added).

. Bailey v. State, 463 So.2d 1059 (Miss.1985).

. Burgess v. State, 473 So.2d 432, 434 (Miss.1985) (emphasis added) (citing Bailey v. State, 463 So.2d 1059 (Miss.1985)).

. URCCC 9.04(A)(1).

. URCCC 9.04(I)(l)-(3).

. E.g., Fulks v. State, 18 So.3d 803 (Miss.2009); Ross v. State, 954 So.2d 968 (Miss.2007); Ramos v. State, 710 So.2d 380 (1998); Snelson v. State, 704 So.2d 452 (Miss.1997); Harrison v. State, 635 So.2d 894 (Miss.1994); Frierson v. State, 606 So.2d 604 (Miss.1992); Darghty v. State, 530 So.2d 27 (Miss.1988).