[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 137 
The appellant, Dwight Demond Moss, was convicted of trafficking in cocaine, a violation of § 13A-12-231, Ala. Code 1975, and of unlawful possession of marijuana in the second degree, a violation of §13A-12-214. He was sentenced to 15 years' imprisonment for the trafficking conviction and to 12 months' imprisonment for the possession conviction; the sentences were to run concurrently.
 I.
Moss contends that the evidence was insufficient to sustain his conviction for trafficking in cocaine because, he says, the State failed to prove that he was in constructive possession of the cocaine. (Issue IV in Moss's brief.)
The evidence offered at trial indicated that on September 27, 2000, the Tallapoosa County Narcotics Task Force[1] executed a search warrant at 198 Reeder Road in Dadeville. The search warrant was based on information received by a confidential informant who notified law-enforcement officers that he had seen a large amount of marijuana at the mobile home at that address. During the search, law-enforcement officers discovered marijuana in a trash can in the kitchen; a plastic "baggie" containing cocaine residue and marijuana stems in a bedroom; a "baggie" containing cocaine in the backyard approximately 17 yards from the back door of the residence; a "baggie" containing cocaine in the front yard; and packaging typically used to package narcotics in the side yard of the residence. Moss was present in the residence, along with two small children, when the search warrant was executed. At trial, he stipulated that he was a resident of the premises on the day of the search, and the State presented evidence indicating that clothes, mail, receipts, and bills belonging to Moss were found in the residence. After the narcotics were found, Moss was arrested and read his Miranda[2] rights. Moss admitted to officers on the scene that the marijuana and cocaine found in the mobile home belonged to him and that he had been smoking marijuana earlier in the day; however, he stated that the cocaine found in the yard belonged to Dexter Ty, who, he said, had just left. Moss also told officers that one of the children in the home was his and one was Ty's. *Page 138 
 "`In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.'" Ballenger v. State, 720 So.2d 1033, 1034 (Ala.Crim.App. 1998), quoting Faircloth v. State, 471 So.2d 485, 488 (Ala.Crim.App. 1984), aff'd, 471 So.2d 493 (Ala. 1985). "`The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.'" Nunn v. State, 697 So.2d 497, 498 (Ala.Crim.App. 1997), quoting O'Neal v. State, 602 So.2d 462, 464 (Ala.Crim.App. 1992). "`When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court's decision.'" Farrior v. State, 728 So.2d 691, 696
(Ala.Crim.App. 1998), quoting Ward v. State, 557 So.2d 848, 850 (Ala.Crim.App. 1990). "The role of appellate courts is not to say what the facts are. Our role . . . is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury."
Ex parte Bankston, 358 So.2d 1040, 1042 (Ala. 1978).
 "In reviewing a conviction based on circumstantial evidence, this court must view that evidence in the light most favorable to the prosecution. The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. United States v. Black, 497 F.2d 1039 (5th Cir. 1974); United States v. McGlamory, 441 F.2d 130 (5th Cir. 1971); Clark v. United States, 293 F.2d 445(5th Cir. 1961).
 "`W)e must keep in mind that the test to be applied is not simply whether in the opinion of the trial judge or the appellate court the evidence fails to exclude every reasonable hypothesis but that of guilt; but rather whether the jury might so conclude. Harper v. United States, 405 F.2d 185 (5th Cir. 1969); Roberts v. United States, 416 F.2d 1216 (5th Cir. 1969). The procedure for appellate review of the sufficiency of the evidence has been aptly set out in Odom v. United States, 377 F.2d 853, 855 (5th Cir. 1967):
 "`Our obligation, therefore, is to examine the record to determine whether there is any theory of the evidence from which the jury might have excluded every hypothesis except guilty beyond a reasonable doubt. Rua v. United States, 5 Cir., 1963, 321 F.2d 140; Riggs v. United States, 5 Cir., 1960, 280 F.2d 949. In Judge Thornberry's words,
 "`. . . the standard utilized by this Court is not whether in our opinion the evidence and all reasonable inferences therefrom failed to exclude every hypothesis other than guilt, but rather whether there was evidence from which the jury
might reasonably so conclude." Williamson v. United States, 5th Cir., 1966, 365 F.2d 12, 14. (Emphasis supplied)"
 "`The sanctity of the jury function demands that this court never substitute its decision for that of the jury. Our obligation is [to] examine the welter of evidence to determine if there exists any reasonable theory from which the jury might have concluded *Page 139 
 that the defendant was guilty of the crime charged.' McGlamory, 441 F.2d at 135 and 136."
Cumbo v. State, 368 So.2d 871, 874-75 (Ala.Crim.App. 1978).
First, Moss contends that the State failed to prove that he was in constructive possession of the cocaine found in the yard because, he says, the State failed to prove that he had exclusive possession of the premises. However, the State was not required to prove that he had exclusive possession of the premises in order to prove constructive possession.
 "`When constructive possession is relied on, the prosecution must also prove beyond a reasonable doubt that the accused had knowledge of the presence of the controlled substances. Campbell v. State, [439 So.2d 718 (Ala.Cr.App.), rev'd on other grounds, 439 So.2d 723 (Ala. 1983)]; Yarbrough v. State, 405 So.2d 721 (Ala.Cr.App.), cert. denied, 405 So.2d 721 (Ala. 1981). This knowledge may be inferred from the accused's exclusive possession, ownership, and control of the premises. Temple v. State, 366 So.2d 740 (Ala.Cr.App. 1978). When the accused is not in exclusive possession of the premises, however, this knowledge may not be inferred unless there are other circumstances tending to buttress this inference. Korreckt v. State, 507 So.2d 558 (Ala.Cr.App. 1986); Temple v. State, [366 So.2d at 743]. While non-exclusive possession may raise a suspicion that all the occupants had knowledge of the contraband found, a mere suspicion is not enough. Some evidence that connects a defendant with the contraband is required. Grubbs v. State, 462 So.2d 995, (Ala.Cr.App. 1984); Temple v. State.'
 "Robinette v. State, 531 So.2d 682, 686 (Ala.Cr.App. 1987), rev'd on other grounds, 531 So.2d 697 (Ala. 1988).
". . . .
 "In Temple v. State, 366 So.2d 740 (Ala.Cr.App. 1978), this court provided a non-exclusive list of circumstances that may establish a connection between a defendant and the contraband found on the defendant's property when the defendant is not in exclusive possession of the premises.
 "`While the kinds of circumstances which may provide a connection between a defendant and the contraband are unlimited and will naturally depend on the facts of each particular case, 56 A.L.R.3d 948 (1974), it has generally been stated that:
 "`The kinds of circumstances which provide such connection are: (1) evidence that excludes all other possible possessors; (2) evidence of actual possession; (3) evidence that the defendant had substantial control over the particular place where the contraband was found; (4) admissions of the defendant that provide the necessary connection, which includes both verbal admissions and conduct that evidences a consciousness of guilt when the defendant is confronted with the possibility that an illicit drug will be found; (5) evidence that debris of the contraband was found on the defendant's person or with his personal effects; (6) evidence which shows that the defendant, at the time of the arrest, had either used the contraband very shortly before, or was under its influence.
 "`The kinds of evidence which might be relevant, but which by themselves do not add the necessary connection are: (1) admissions *Page 140 
 of previous use; (2) conduct that might be construed as evidencing a consciousness of guilt which was not displayed upon the defendant's confrontation of the possibility that an illicit drug would be discovered; (3) evidence of previous use; (4) evidence that showed the defendant's physical proximity to the contraband."
"`Land and Water L.Rev. 236, 248-49 (1974).'
"366 So.2d at 743."
Posey v. State, 736 So.2d 656, 658-59 (Ala.Crim.App. 1997).
Here, although Moss was not in exclusive possession of the premises, the State, contrary to Moss's contention, presented evidence of other circumstances which, combined with Moss's presence on the premises, was sufficient to establish that he had knowledge of the cocaine found in the yard and, thus, that he was in constructive possession of that cocaine. Moss stipulated that he was residing at the residence on September 27, 2000, and the State presented evidence that many of Moss's belongings were found in the residence. Moss admitted that the marijuana stems and the cocaine residue found inside the residence belonged to him and admitted to having smoked marijuana earlier that day. See, e.g, Korrecktv. State, 507 So.2d 558, 565 (Ala.Crim.App. 1986), quoting Temple v.State, 366 So.2d 740, 743 (Ala.Crim.App. 1978) ("`E]vidence that debris of the contraband was found on the defendant's person or with his personal effects has been observed to be a type of circumstance which may provide a connection sufficient to infer knowledge of the presence of the contraband to the accused.'"). The baggie containing the cocaine residue and the marijuana stems found in the residence, which Moss admitted belonged to him, was identical to the baggie containing the cocaine that was found in the backyard. (R. 204.) Finally, Moss told the officers that the cocaine found outside belonged to Dexter Ty, thus suggesting that he knew of the presence of that cocaine. This was sufficient evidence from which the jury could have reasonably inferred that Moss had knowledge of the cocaine found in the yard.
Moss also contends that the State failed to prove constructive possession because, he says, the State failed to prove that the cocaine was, in fact, found on the property at 198 Reeder Road. Specifically, he maintains that the State presented no evidence as to where the property line separating the premises from the next-door-neighbor's premises was located. The testimony at trial indicated that the cocaine was found approximately 17 yards from the back door of the residence; it was next to a "tree line with heavy vegetation" that separated the premises from the next-door-neighbor's premises (R. 155) on the side of a well-beaten trail under some pine straw. Officer Marcus Osborn, who initially found the cocaine under the pine straw, testified that there was a distinctive difference in the maintenance of the premises on the side of the tree line where the cocaine was found (the side of the premises being searched) and the other side of the tree line toward the next-door neighbor's house. Although the State did not present evidence of official records indicating exactly where the property line was located, we do not believe such evidence was necessary to sustain Moss's conviction. There was evidence from which the jury could have inferred that the cocaine was found in Moss's backyard.
In any event, the question of constructive possession turns on an accused's knowledge of the presence of the narcotics. Whether narcotics are located outside the official property line of the premises being *Page 141 
searched is but one factor to consider when determining whether the totality of the circumstances establishes that an accused had knowledge of the presence of the narcotics. In this case, there was sufficient evidence from which the jury could have inferred that Moss had knowledge of the presence of the cocaine, whether or not the cocaine was located within the property line.
 II.
Moss also contends that the trial court erred in denying his motion made pursuant to Batson v. Kentucky, 476 U.S. 79 (1986), because, he says, the State struck prospective jurors on the basis of race. (Issue I in Moss's brief.)
After the jury was selected, the following occurred:
 "[Moss's counsel]: Judge, I was trying to check my numbers real quick here. According to my count we had 29 whites in the venire, 13 blacks. If my count is correct the State struck 9 blacks and 6 whites.
 "We think because of the total breakdown, the racial breakdown, that that is prima facie discriminatory. We'd ask the Court to inquire into the reasons or the basis that the State struck these 9 black individuals. We've got I think present — I know we've got 1 black person on the jury, may have 2. Right now we've got two blacks on the jury and — 11 with the alternate, 11 whites?
 "THE COURT: All right, sir. And your basis for showing a prima facie case is that the percentage of jurors, is that correct, plus the fact that the State struck 9. I suppose that would leave you with striking 4; is that correct?
 "[Moss's counsel]: That would have been 9 blacks were stricken, 6 whites by the State.
 "THE COURT: Right. So that would have left you striking 4 of the black jurors then, is that correct, if there were 13 to begin with?
 "[Prosecutor]: That would be incorrect because my records show that he only struck 1 black.
 "THE COURT: In that case we've got some sort of discrepancy here?
 "[Moss's counsel]: These are the black members of the jury, striking number 3, 15, 151, 221, 77, 73, 244, 74, 161.
"THE CLERK: Also 160 we have.
 "THE COURT: That would be 10 of 13. And there's 1 on. That would be 11.
 "[Moss's counsel]: Judge, I would also say that in the brief time that I've had between the jury being stricken and looking at the answers that were given by these 9 black venire people I don't see anything in their responses that would indicate they couldn't be fair and impartial. So to me it looks like in the breakdown that they were stricken because of their race, very disproportionate to the total racial breakdown of the venire.
 "THE COURT: What's the State say as to the defendant's argument that a prima facie case has been shown?
 "[Prosecutor]: The State would argue that a prima facie case has not been shown. Simply spouting numbers is not sufficient to meet his burden, Your Honor.
 "THE COURT: I believe that at one time we did talk in terms of numbers being — in and of themselves being sufficient to establish a prima facie case and sufficient to defeat on the one hand and sufficient to defeat the motion on the other. But I think that the cases now require something else. So I'm going to *Page 142 
 rule that no prima facie case has been shown. So I'll not require the State to justify their strikes.
 "[Moss's counsel]: Judge, if I could then I would like to give the information that was given by these jurors as a basis for showing there's nothing in the information they gave that would justify striking them other than race. If the court would like me just to rundown —
 "THE COURT: I tell you what I would like for you to do. I would like for you to tell me everything that you have in support of your motion rather than telling me one thing and then, well, if that didn't work let me try something else and if that didn't work let me try something else. So you give it all to me now.
 "[Moss's counsel]: I did originally, Judge. I said the information that I've had the opportunity to review as far as responses these jurors gave no basis to think that they could not be fair and impartial. I stated that when I stated my original grounds."
(R. 120-23.) Moss's counsel then went on to describe each juror the State struck (giving their gender, race, employment, and marital status) and stated his opinion that "no information given by these 9 black veniremembers indicated that they could not be fair and impartial or that they had any bias or prejudice not unlike the other white venire people." (R. 125.)
It is well settled that the burden of persuasion in establishing a prima facie case of discrimination is initially on the party alleging discriminatory use of peremptory strikes. See Ex parte Branch,526 So.2d 609, 622 (Ala. 1987); and Edwards v. State, 628 So.2d 1021,1024 (Ala.Crim.App. 1993). "The facts and circumstances necessary to establish a prima facie case of purposeful discrimination in the jury selection process will, of course, vary from case to case, depending on the particular facts and circumstances involved." Kidd v. State,649 So.2d 1304, 1311 (Ala.Crim.App. 1994). While it is true the striking of one person for a racial reason is a violation of the principles ofBatson, and grounds for reversal, see Williams v. State, 548 So.2d 501,507 (Ala.Crim.App. 1988), it is equally true that "[m]erely showing that the challenged party struck one or more members of a particular race is not sufficient to establish a prima facie case." Edwards, 628 So.2d at 1024. See also Ex parte Trawick, 698 So.2d 162 (Ala. 1997) (holding that without more, the mere fact that the prosecutor used a high number of strikes to remove women from the venire is insufficient to establish a prima facie case).
 "A defendant fails to establish a prima facie case of discrimination under Batson and Ex parte Branch, 526 So.2d 609 (Ala. 1987), where the defendant fails to show any evidence of discrimination other than the number of African-American veniremembers who were struck. Young v. State, 730 So.2d 1251, 1253-54
(Ala.Cr.App. 1998); Moore v. State, 677 So.2d [828,] 829 [(Ala.Crim.App. 1996)]. `"It is within the sound discretion of the trial court to determine if the State's peremptory challenges of black jurors are motivated by intentional racial discrimination."' Taylor v. State, 666 So.2d 36, 43 (Ala.Cr.App. 1994), aff'd 666 So.2d 73 (Ala. 1995), cert. denied, 516 U.S. 1120 . . . (1996), quoting Ex parte Lynn, 543 So.2d 709, 712 (Ala. 1988), cert. denied, 493 U.S. 945
. . . (1989). `A circuit court's ruling on a Batson
objection is entitled to great deference, and we will reverse a circuit court's Batson findings only if they are clearly erroneous.' *Page 143 
 Stokes v. State, 648 So.2d 1179, 1181 (Ala.Cr.App. 1994) (citations omitted)."
Powell v. State, 796 So.2d 404, 431 (Ala.Crim.App. 1999), aff'd,796 So.2d 434 (Ala. 2001).
Moss offered no evidence, other than the number of black veniremembers struck by the State and his counsel's opinion that the struck veniremembers did not indicate during voir dire that they could not be fair and impartial, to show that the State exercised its peremptory strikes in a discriminatory manner. Moss did not offer evidence, or even allege, that the struck veniremembers shared only the characteristic of race, that there was a lack of meaningful voir dire directed at black veniremembers, that black and white veniremembers were treated differently, or that the prosecutor had a history of using peremptory strikes in a discriminatory manner. Moss noted only that the State had used 10 of its 13 peremptory strikes to strike blacks and that, in his counsel's opinion, no articulable reason for the strikes was revealed during voir dire. However, as we stated in Johnson v. State, 823 So.2d 1,20 (Ala.Crim.App. 2001), "[w]e do not find the statistics or defense counsel's assertions that in his opinion no legitimate reasons for the strikes were revealed during voir dire to be sufficient to establish a prima facie case of racial discrimination." See also Duncan v. State,827 So.2d 838, 855 (Ala.Crim.App. 1999), aff'd, 827 So.2d 861 (Ala. 2001) (Batson motion in which counsel asserted only statistics and his opinion that nothing was revealed during voir dire to provide a legitimate reason for the strikes was held insufficient to satisfy defendant's burden of proving a prima facie case). We find no error in the trial court's denial of Moss's Batson motion.
 III.
Moss contends that the trial court erred in denying his motion for disclosure of the identity of the confidential informant. (Issue II in Moss's brief.) Specifically, Moss argues that the confidential informant's identity was necessary to his defense that the marijuana and cocaine found in his home had been planted by the informant "in order to get even with" him. (Moss's brief at p. 6.)
Before trial, Moss filed a motion for the disclosure of the confidential informant's identity. The trial court held a hearing on the motion. At the hearing, Moss argued that the identity of the confidential informant was necessary for his defense. Specifically, he argued that "if this informant is the person we think it is" then the "informant knew the location of the drugs because the informant placed the drugs there in an attempt to set up Mr. Moss." (R. 5, 8.) He maintained that "the informant put the drugs there and went to the police and took them out there and showed them where they were to get Mr. Moss charged." (R. 8.) In opposition to the motion, the State argued that the confidential informant was a "mere tipster" and was not a material witness or an active participant in the crime and that, therefore, Moss was not entitled to know his identity. Moss presented no evidence to support his motion. However, the State called Frederick White, an investigator with the Tallapoosa County Narcotics Task Force who applied for and executed the search warrant. White testified that, contrary to Moss's assertion, the confidential informant did not tell him the location of the illegal drugs in Moss's home, but merely told him that he had seen illegal drugs in the home. The trial court then denied Moss's motion. *Page 144 
 "`Since Roviaro v. United States, 353 U.S. 53 . . . (1957), it is clear that the general rule of nondisclosure of witnesses is not always applicable to the government informant. In cases involving the "tipster" type of informant, who merely conveys information to the government but neither witnesses nor participates in the offense, courts generally hold that the disclosure of his identity is not material and, therefore, not required.'
 "Self v. State, 420 So.2d 792, 795 (Ala.Cr.App. 1981), rev'd, 420 So.2d 798 (Ala. 1982) (emphasis added).
 "`Generally speaking, where the identity of a confidential informer is sought on the issue of guilt or innocence, and the alleged informer is shown to have been a participant in the transaction constituting the offense, the prosecution is required to disclose his identity and address on the request of the accused. The rule does not apply, however, to an informer who is involved in only an indirect way, such as a `tipster."'
 "Lightfoot v. State, 531 So.2d 57, 58 (Ala.Cr.App. 1988) quoting 33 Am.Jur.P.O.F.2d 549 Criminal Law: Need for Disclosure of Identity of Informant, at 559, 563 (1983) (emphasis added). See also, Garner v. State, 606 So.2d 177 (Ala.Cr.App. 1992); Colbert v. State, 615 So.2d 1213 (Ala.Cr.App. 1992), rev'd on an unrelated ground, 615 So.2d 1218 (Ala. 1992)."
Mason v. State, 768 So.2d 981, 1001-02 (Ala.Crim.App. 1998), aff'd,768 So.2d 1008 (Ala. 2000). Furthermore, the burden is on the defendant when seeking disclosure of the identity of a confidential informant to demonstrate the need for such disclosure. See, e.g., Robinson v. State,728 So.2d 650 (Ala.Crim.App. 1997), and Lightfoot v. State, 531 So.2d 57
(Ala.Crim.App. 1988).
In this case, Moss failed to meet his burden. The only evidence in the record indicates that the confidential informant was a "mere tipster" and was not a material witness or a participant in the crimes charged. Although Moss was given the opportunity to present evidence showing the need for disclosure of the informant's identity, Moss presented no such evidence at the hearing on his motion. His counsel merely argued to the trial court and that argument — that the informant knew the exact location of the illegal drugs because the informant planted the drugs — was affirmatively refuted by the testimony of White, who said that the informant did not tell him the exact location of the drugs. Because Moss failed to meet his burden, the trial court did not err in denying Moss's motion for disclosure of the confidential informant's identity.
 IV.
Moss contends that the trial court erred in admitting testimony regarding a prior search warrant executed at 198 Reeder Road on July 14, 2000, and in denying his motions for a mistrial and for a continuance once it ruled that the evidence was admissible. (Issues III and IV in Moss's brief.) Moss argues that evidence of the prior search warrant was inadmissible because, he says, the State gave untimely notice of its intent to use evidence of the prior search warrant at trial, the State introduced the evidence solely for the purpose of proving his bad character in violation of Rule 404(b), Ala.R.Evid., and the prejudicial effect of the evidence outweighed its probative value. In addition, Moss argues that the trial court erred in not declaring a mistrial and granting him a continuance once it ruled that the evidence was admissible in order to give him time to investigate the circumstances of the prior search warrant. *Page 145 
Although Moss complains about the trial court's various rulings regarding the evidence of the prior search warrant, the record reflects that it was Moss, not the State, that first introduced the evidence at trial. On the morning of the first day of trial, Moss moved to exclude any evidence relating to the July 14, 2000, search warrant on the ground that the State's notice was not timely, and that the evidence was irrelevant and prejudicial. The trial court postponed ruling on Moss's motion to exclude the evidence and instructed both parties not to mention the prior search warrant until its ruling. On the morning of the second day of trial, the trial court ruled that because Moss was claiming that he was not the owner, a lessee, or even a resident of the premises that were searched and because the cocaine forming the basis of the trafficking charge was found outside the house, limited evidence of the prior search warrant would be admissible. Specifically, the court stated that evidence indicating that Moss was present at the residence when the prior search warrant was executed and evidence of any drugs found outside the house in the same area that the cocaine forming the basis for the present trafficking charge was found during that prior search (the court excluded any evidence of drugs found inside the home) would be admissible to show Moss's residence on, and/or control of, the premises. The trial court also indicated that if the evidence was presented, it would give the jury a limiting instruction. Moss objected to the trial court's ruling on the same grounds he had raised before and he requested that the trial court grant a mistrial and continue the case so that he could investigate the circumstances of the prior search warrant. The trial court denied Moss's requests. The following then occurred:
 "[Moss's counsel]: . . . Judge, on the prior issue — and we have cross-examined witnesses raising the issue of who owned the trailer, whether there was any attempt to determine who possessed it or owned it. That's not to say we're not going to concede to ownership at some point during this trial. That decision will be made probably after Investigator White testifies. I have cross-examined witnesses concerning their attempt to determine who lived there and other things. Is it my understanding that if we conceded or stipulate that Mr. Moss possessed the trailer on the day in question, September 27, that the Court would not allow the evidence of that July 14 search warrant in?
 "THE COURT: If there's a concession that he was in possession and control of the trailer on the occasion complained of then that eliminates the necessity of this other testimony.
"[Moss's counsel]: Can I have one second?
". . . .
 "[Moss's counsel]: Judge, we've talked with [the prosecutor]. And we've decided that we would stipulate concerning the trailer. I think the exact wordage of the stipulation may be an issue the Court would address.
 "I told [the prosecutor] we would stipulate that Mr. Moss was living in the trailer on September 27. I think [the prosecutor] is wanting the language that Mr. Moss was in possession and control of the trailer on September 27. And I just don't exactly know what control means.
 "THE COURT: Let me kind of think about that until our first break and then we can — let me toy around with something to propose to you as a stipulation."
(R. 223-25.)
The State then called Frederick White to testify. In an attempt to implicate his *Page 146 
friend, Dexter Ty, in the possession of the drugs, Moss's counsel cross-examined White as follows:
 "[Moss's counsel]: Okay. How many times — let me ask it this way — how many times were you personally watching the trailer did you see Dexter Ty there before September 27?
"[White]: One time.
 "[Moss's counsel]: One time. And the time you saw him was he coming there or was he leaving?
"[White]: The time I saw him he was fleeing.
"[Moss's counsel]: So he was running from there?
"[White]: Yes.
 "[Moss's counsel]: Were y'all chasing him while he was running?
"[White]: No. Actually it was during a search warrant.
 "[Moss's counsel]: The fact that he ran I suppose would make you think that he was up to no good, correct?
"[White]: Quite possible.
"[Moss's counsel]: Did y'all catch him?
"[White]: Nope.
"[Moss's counsel]: Got away from you?
"[White]: Sure did."
(R. 259-60.) During a break in cross-examination of White, the following occurred:
"[Prosecutor]: Why don't we address one other issue?
 "In response to defense counsel's questions particularly when he was asking this officer if he had seen Dexter Ty at the residence. And again [Moss's counsel] went down this line of questioning. [White] said I've seen him there one time. [Moss's counsel] then asked what was he doing. [White] said he was fleeing. [Moss's counsel] went on to ask, well, since he was fleeing wouldn't — as a matter of fact, the search warrant even came out on the prior date.
"THE COURT: It did.
 "[Prosecutor]: And [Moss's counsel] said he was fleeing, he was running. And then [Moss's counsel] said wouldn't that make you think that [Ty] was up to no good. I think that line of questioning allows me to go into the fact that the defendant was also present and he, himself, was fleeing the scene. [Moss's counsel] also went on to ask if they had arrested or charged [Ty] in connection with fleeing the scene at that time. The defendant was, in fact, arrested and charged from that search warrant.
 "THE COURT: I really think that's an awfully slippery slope. And I notice the dimension of the search warrant. While it was responsive to the question, it wasn't necessarily the question that was asked. I suppose it would be fair to ask this witness on redirect if Mr. Moss was present on that occasion where Mr. Ty was seen and what was Mr. Moss doing at the time. But as far as — then everybody better watch out for the line of questions on arrest. Okay.
 "Let's take about five or ten minutes. Then we will drive along.
"(BREAK)
 "[Moss's counsel]: It's my understanding that the DA will elicit testimony from Investigator White to the effect that on July 14, 2000, when they came to the location where the trailer is located that Dwight Moss ran. And that Dexter Ty also ran. While Investigator White did give a response to one of my questions that indicated Dexter Ty ran, it was a nonresponsive answer to my question. If I remember correctly my question *Page 147 
 was when you did surveillance on the trailer, what did you see? He said he saw Dexter Ty one time. Then we had some confusion about what he saw. I asked him a specific question or when you saw [Ty] was he coming or going. That's where he volunteered the information that he was running from the trailer.
 "We would argue that the admission of the evidence as to Mr. Moss running is irrelevant to this case. It concerns the prior search warrant on July 14. If by any means it is relevant it is extremely prejudicial to Mr. Moss. It's sort of been our defense at this point that the drugs there most likely belonged to [Ty]. We've just sort of sought to introduce evidence to that effect. Admitting this evidence would be extremely prejudicial to Mr. Moss, we'd ask the Court not to allow it.
 "THE COURT: I would tend to agree with you more if you had not pursued the line of questioning further to say that didn't this investigator think that Mr. Ty running was some indication of guilt on his part and has he been arrested for anything that's down there in spite of the fact that he's been in the courtroom this morning and all of that. We're going to limit it as much as possible. But I'm going to deny your position at this time."
(R. 286-89.) During redirect examination, the State questioned White as follows:
 "[Prosecutor]: Now, if you'll recall in response to some questions by [Moss's counsel]. I believe he asked you during these rolling surveillance if you ever saw Dexter Ty at the residence; is that correct?
"[White]: Yes.
"[Prosecutor]: And I think your response is once?
"[White]: Yes.
 "[Prosecutor]: Then he went on to ask you what he was doing, was he coming or going? I think you said he was fleeing?
"[White]: Yes.
 "[Prosecutor]: You further indicated it was a search warrant being executed at that point, correct?
"[White]: Yes.
 "[Prosecutor]: And he went on to ask you was it a fact that Dexter Ty was fleeing, would that indicate to you he was up to no good and your response was yes[,] if I'm not mistaken. Do you recall that line of questioning?
"[White]: Yes.
 "[Prosecutor]: Now, when you say Dexter Ty was fleeing, can you come down and tell us or show us where he was fleeing and in what direction?
 "[White]: The back door area down this trail and out that way.
"[Prosecutor]: Took off?
"[White]: Took off.
"[Prosecutor]: You may be seated. Thank you.
"Now, my question is was anyone with Dexter Ty?
"[White]: Yes.
"[Prosecutor]: Who was with him?
"[White]: Mr. Moss.
"[Moss's counsel]: Objection, same grounds.
"THE COURT: Overruled.
"[Prosecutor]: Who was with him?
"[White]: Mr. Moss.
"[Prosecutor]: What was Mr. Moss doing?
"[White]: Running.
"[Prosecutor]: He was fleeing also, wasn't he?
"[White]: Yes. *Page 148 
"[Prosecutor]: What path was he fleeing down?
"[White]: That same trail.
 "[Prosecutor]: He was fleeing down this exact same trail?
"[White]: Yes.
 "[Prosecutor]: And that search warrant was on July 14, 2000; is that correct?
"[White]: Yes, sir."
(R. 309-10.) After the testimony of two more witnesses, Moss stipulated that he was a resident of the premises searched on September 27, 2000.
Moss cannot complain about the admission of testimony regarding the prior search warrant when he was the first person to introduce evidence of the prior search in his cross-examination of White. When Moss's counsel cross-examined White, the trial court had indicated that because Moss was going to stipulate that he was residing at the residence at the time of the search warrant that gave rise to the present charges was executed, evidence of the prior search was no longer relevant and, therefore, was no longer admissible. Nevertheless, in an attempt to implicate Dexter Ty, Moss questioned White about the circumstances surrounding the prior search. "`A defendant is not permitted to present evidence to the jury on a specific issue and object when the state attempts to introduce evidence on the same point.'" Rutledge v. State, 651 So.2d 1141, 1148
(Ala.Crim.App. 1994), quoting Morgan v. State, 589 So.2d 1315, 1320
(Ala.Crim.App. 1991).
 "The State, on redirect examination, may question a witness with regard to matters brought out by the defendant on cross-examination. Jones v. State, 22 Ala. App. 141, 142, 113 So. 478 (1927).
 "`The purpose of redirect examination is "to answer any matters brought out on the cross-examination of the witness by [the] adversary." . . . "`A party who has brought out evidence on a certain subject has no valid complaint as to the trial court's action in allowing his opponent or adversary to introduce evidence on the same subject.'" . . . "Whenever defense counsel injects an issue into a case during cross-examination, the State may, within the discretion of the trial judge, question the witness as to that matter."'
 "Sistrunk v. State, 596 So.2d 644, 647 (Ala.Cr.App. 1992). See also Leonard v. State, 551 So.2d 1143, 1145
(Ala.Cr.App. 1989); Campbell v. State, 508 So.2d 1186, 1189 (Ala.Cr.App. 1986). `This is but common fairness and an application of the rule permitting the admission of evidence by reason of the admission of similar evidence of the adverse party.' White v. State, 344 So.2d 1270, 1273 (Ala.Cr.App. 1977)."
Crauswell v. State, 638 So.2d 11, 14 (Ala.Crim.App. 1993).
Because Moss first elicited testimony regarding the circumstances surrounding the prior search, the State was properly allowed to elicit further evidence on that same subject. We find no error as to this claim.
Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
McMillan, P.J., and Cobb, Baschab, and Wise, JJ., concur.
[1] It appears from the record that the Task Force is composed of law-enforcement personnel from the Alabama Bureau of Investigation, the Tallapoosa County Sheriff's Department, and the City of Alexander City Police Department.
[2] See Miranda v. Arizona, 384 U.S. 436 (1966). *Page 149