882 So.2d 274 (2003)
Ex parte J.C.
(In re J.C.
v.
State of Alabama).
1020824.
Supreme Court of Alabama.
September 5, 2003.
*275 J. Brent Burney of Burney & Burney, Decatur, for petitioner.
William H. Pryor, Jr., atty. gen., and Andy S. Poole and Jack W. Willis, asst. attys. gen., for respondent.
HOUSTON, Justice.
The petitioner, J.C., was convicted as a youthful offender of trafficking in marijuana and possession of drug paraphernalia. He was sentenced to three years' imprisonment on the trafficking charge and to one year's imprisonment on the drug-paraphernalia charge. The trial court suspended the sentences and ordered J.C. to attend a disciplinary-rehabilitation program, to be followed by three years of probation. The Court of Criminal Appeals affirmed both convictions by an unpublished memorandum. J.C. v. State (CR-01-1447, January 7, 2003), 876 So.2d 1185 (Ala.Crim.App.2003) (table). We granted J.C.'s petition for a writ of certiorari to review his conviction for trafficking in marijuana, a violation of Ala.Code 1975, § 13A-12-231(1)a.[1] We reverse and remand.

I. Facts and Background
Officers from various law-enforcement agencies executed a search warrant for the residence of J.C.'s father. J.C., a 19-year-old college student at the time of the search, resided in the home with his father. No one was home when the officers entered the residence.
In the father's room were two closets and an adjoining bathroom. A door separated the father's bedroom from the other parts of the house. J.C.'s bedroom was on the opposite side of the house, approximately 50 feet from his father's bedroom.
As a result of the search, the following items were found in the father's bedroom: (1) a set of digital scales in a cabinet in the bathroom; (2) a wire strainer in the cabinet *276 in the bathroom; (3) a brown paper bag containing two large blocks of marijuana on the floor of a closet; (4) a duffel bag in a closet that contained a large plastic trash bag with 10 small plastic bags; each small bag contained approximately one pound of marijuana; (5) a Smith and Wesson .38 caliber revolver next to the vanity; (6) a cigarette cellophane wrapper containing approximately one gram of marijuana in the vanity; (7) several large prescription bottles that contained pills in a closet; (8) one-quarter ounce of compressed marijuana in a small, plastic basket in a closet; (9) one-half ounce of marijuana in a woman's boot in a closet; (10) a clip used to hold the end of a marijuana cigarette on the vanity; (11) loose marijuana on the floor under a nightstand; (12) a piece of lined notebook paper containing written entries, thought to be drug records, in the vanity; (13) one large freezer bag containing approximately three grams of marijuana in a dresser; (14) a large freezer bag that contained approximately one ounce of marijuana under the mattress of the father's bed; (15) a white tray containing marijuana under the dresser; (16) a police scanner; (17) binoculars; (18) a crossbow in a closet; (19) two bags of marijuana weighing a total of one pound and eight ounces in the bathroom; and (20) a photograph of the father reclining in bed smoking what appeared to be a marijuana cigarette.
The following items were found on the opposite side of the house in J.C.'s bedroom: (1) two pipes, a broken pipe stem, and packs of rolling papers found in a drawer in the chest of drawers; (2) an empty wooden "dug-out" (a device used to store and smoke marijuana), along with a pipe, in the chest of drawers; (3) several marijuana seeds in the closet; and (4) a shoe box in his closet that contained a shot glass that had a rendering of a marijuana leaf on it, a cigarette lighter with a rendering of a marijuana leaf on it, and a piece of incense.
Leslie Woodall, an Alcoholic Beverage Control Board agent who participated in the search, testified that, during the search, he could smell marijuana throughout the house. However, all the marijuana found during the search, which totaled more than 17 pounds, was found in the father's bedroom.
The trial judge stated that, even though all 17 pounds of marijuana was found in the father's bedroom, the strong odor of marijuana in the house and the paraphernalia and marijuana seeds found in J.C.'s bedroom satisfied the judge beyond a reasonable doubt that J.C. knew the marijuana was in the house. Accordingly, the trial court found J.C. guilty of trafficking in marijuana pursuant to Ala.Code 1975, § 13A-12-231(1)a. J.C. filed a motion for a new trial, challenging the sufficiency of the evidence to support the trafficking conviction. The trial court denied that motion, and J.C. appealed.
The Court of Criminal Appeals affirmed J.C.'s trafficking conviction. While admitting in its unpublished memorandum that the case was a close one, the Court of Criminal Appeals held that a rational finder of fact could have found that J.C. constructively possessed the marijuana found in his father's bedroom. The court stated:
"Officer Woodall [one of the officers who conducted the search] testified to the powerful odor of marijuana that permeated the house. See, e.g., Goodloe v. State, 783 So.2d 931, 935 (Ala.Crim.App.2000)(no testimony indicating that premises smelled of marijuana as contributing to this Court's finding that the State failed to prove that the appellant had constructively possessed the marijuana in question). Additionally, not only did the officers find drug paraphernalia in *277 J.C.'s room, but they also found marijuana seeds, debris from the same type of controlled substance found in J.C.'s father's bedroom and bathroom. See e.g., Moss v. State, 834 So.2d 135 (Ala.Crim.App.2002) (evidence of cocaine residue found in a baggie belonging to the appellant as contributing to this Court's finding that the State had proved constructive possession). Although this is a close case, this evidence could have led a rational finder of fact to find that J.C. had constructively possessed the marijuana in question. Therefore, his argument on appeal is without merit, and the trial court properly denied his motion for a new trial."

II. Standard of Review
The role of this Court in reviewing an appellant's claim that the evidence produced at trial is legally insufficient to support his conviction is a limited one:
"`"In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution. Faircloth v. State, 471 So.2d 485 (Ala.Cr.App.1984), aff'd, 471 So.2d 493 (Ala.1985)." Powe v. State, 597 So.2d 721, 724 (Ala.1991). It is not the function of this Court to decide whether the evidence is believable beyond a reasonable doubt, Pennington v. State, 421 So.2d 1361 (Ala.Cr.App.1982); rather, the function of this Court is to determine whether there is legal evidence from which a rational finder of fact could have, by fair inference, found the defendant guilty beyond a reasonable doubt. Davis v. State, 598 So.2d 1054 (Ala.Cr.App.1992). Thus, "[t]he role of appellate courts is not to say what the facts are. [Their role] is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury." Ex parte Bankston, 358 So.2d 1040, 1042 (Ala.1978)(emphasis original).'"
Ex parte Tiller, 796 So.2d 310, 312 (Ala.2001)(quoting Ex parte Woodall, 730 So.2d 652, 658 (Ala.1998)).

III. Analysis
Because it is undisputed that J.C. was not in actual possession of the 17 pounds of marijuana made the basis of his trafficking conviction, the State had to demonstrate that J.C. was in constructive possession of the marijuana:
"In order to establish constructive possession, the State must prove '(1) [a]ctual or potential physical control, (2) intention to exercise dominion and (3) external manifestations of intent and control.'"
Ex parte Fitkin, 781 So.2d 182, 183 (Ala.2000)(quoting Bright v. State, 673 So.2d 851, 852 (Ala.Crim.App.1995)). Where contraband is seized inside a residence, "constructive possession can only arise `where the prohibited material is found on the premises owned or controlled by the appellant.'" Crane v. State, 401 So.2d 148, 149 (Ala.Crim.App.1981)(quoting Williams v. State, 340 So.2d 1144, 1145 (Ala.Crim.App.1976)). "`When constructive possession is relied on, the prosecution must also prove beyond a reasonable doubt that the accused had knowledge of the presence of the controlled substances.'" Ex parte Tiller, 796 So.2d at 312 (quoting Posey v. State, 736 So.2d 656, 658 (Ala.Crim.App.1997)).
"While non-exclusive possession may raise a suspicion that all the occupants had knowledge of the contraband found, a mere suspicion is not enough. Some evidence that connects a defendant with *278 the contraband is required. Generally, the circumstances that provide that connection include:
"`(1) evidence that excludes all other possible possessors; (2) evidence of actual possession; (3) evidence that the defendant had substantial control over the particular place where the contraband was found; (4) admissions of the defendant that provide the necessary connection, which includes both verbal admissions and conduct that evidences a consciousness of guilt when the defendant is confronted with the possibility that illicit drugs will be found; (5) evidence that debris of the contraband was found on defendant's person or with his personal effects; (6) evidence which shows that the defendant, at the time of the arrest, had either used the contraband very shortly before, or was under its influence.'"
Grubbs v. State, 462 So.2d 995, 997-98 (Ala.Crim.App.1984)(quoting Temple v. State, 366 So.2d 740, 743 (Ala.Crim.App.1978)).
In the present case, we do not believe that the evidence presented at trial was legally sufficient to show that J.C. constructively possessed the marijuana found in his father's bedroom. The evidence indicates that the marijuana belonged solely to J.C.'s father. All 17 pounds of marijuana was found behind the father's closed bedroom door  in the father's bedroom and in the adjoining closets and bathroom. No testimony indicated that J.C. had engaged in the distribution of marijuana. J.C. was not in the house when the search began, and there was no direct testimony indicating that J.C. ever entered his father's bedroom. There is simply not sufficient evidence to show that J.C. intended to exercise dominion over the marijuana.
The State argues that J.C.'s "intention to exercise dominion and external manifestations of intent and control are ... evidenced by the fact that he had numerous marijuana smoking pipes, rolling paper, and marijuana seeds in his personal possessions." While certainly relevant, this evidence, by itself, was not legally sufficient to show that J.C. had any intent to exercise dominion over the 17 pounds of marijuana made the basis of his trafficking conviction. Accordingly, the State failed to prove an essential element required to establish constructive possession.

IV. Conclusion
The judgment of the Court of Criminal Appeals is reversed, and this case is remanded for an order or proceedings consistent with this opinion.
REVERSED AND REMANDED.
SEE, LYONS, JOHNSTONE, HARWOOD, and WOODALL, JJ., concur.
STUART, J., concurs specially.
BROWN, J., dissents.
STUART, Justice (concurring specially).
J.C. was charged with trafficking in marijuana. To sustain a conviction for trafficking in marijuana, the State had to establish that J.C. was in "constructive possession of, in excess of one kilo or 2.2 pounds of any part of the plant of the genus Cannabis." See § 13A-12-231(1), Ala.Code 1975. The State did not meet this burden. While the State presented sufficient evidence to sustain a conviction for possession of marijuana, it did not present sufficient evidence to support a conviction for trafficking in marijuana.
BROWN, Justice (dissenting).
I respectfully dissent. In this Court's opinion, the majority concludes that the evidence was legally insufficient to establish that J.C. was in constructive possession of the marijuana found in his father's *279 bedroom. As the Court of Criminal Appeals noted in its unpublished memorandum:
"`"`When constructive possession is relied on, the prosecution must also prove beyond a reasonable doubt that the accused had knowledge of the presence of the controlled substances. Campbell v. State, [439 So.2d 718 (Ala.Cr.App.), rev'd on other grounds, 439 So.2d 723 (Ala.1983)]; Yarbrough v. State, 405 So.2d 721 (Ala.Cr.App.), cert. denied, 405 So.2d [725 (Ala.1981).] This knowledge may be inferred from the accused's exclusive possession, ownership, and control of the premises. Temple v. State, 366 So.2d 740 (Ala.Cr.App.1978). When the accused is not in exclusive possession of the premises, however, this knowledge may not be inferred unless there are other circumstances tending to buttress this inference. Korreckt v. State, 507 So.2d 558 (Ala.Cr.App.1986); Temple v. State, [366 So.2d at 743]. While non-exclusive possession may raise a suspicion that all the occupants had knowledge of the contraband found, a mere suspicion is not enough. Some evidence that connects a defendant with the contraband is required. Grubbs v. State, 462 So.2d 995 (Ala.Cr.App.1984); Temple v. State.'
"`"Robinette v. State, 531 So.2d 682, 686 (Ala.Cr.App.1987), rev'd on other grounds, 531 So.2d 697 (Ala.1988).
"`"....
"`"In Temple v. State, 366 So.2d 740 (Ala.Cr.App.1978), this court provided a non-exclusive list of circumstances that may establish a connection between a defendant and the contraband found on the defendant's property when the defendant is not in exclusive possession of the premises.
"`" ....
"`"`"The kinds of circumstances which provide such connection are: (1) evidence that excludes all other possible possessors; (2) evidence of actual possession; (3) evidence that the defendant had substantial control over the particular place where the contraband was found; (4) admissions of the defendant that provide the necessary connection, which includes both verbal admissions and conduct that evidences a consciousness of guilt when the defendant is confronted with the possibility that an illicit drug will be found; (5) evidence that debris of the contraband was found on the defendant's person or with his personal effects; (6) evidence which shows that the defendant, at the time of the arrest, had either used the contraband very shortly before, or was under its influence."'" '
"Meeker v. State, 801 So.2d 850, 853-54 (Ala.Crim.App.2001)(quoting Posey v. State, 736 So.2d at 658-59), (Judge Shaw and Judge Wise dissenting)."
The evidence produced at trial indicated that over 17 pounds of marijuana was found in the house. In the defendant's room, officers found various devices used to smoke marijuana, including no less than three pipes, a "dug-out" (a device used both to store and to smoke marijuana), and rolling papers, along with an empty rolling paper packet. Officers also found marijuana seeds  debris from the same type of drug found in the father's bedroom. Additionally, officers noticed a strong odor of marijuana in the house when they were conducting the search.
Based on this evidence, I believe that a rational finder of fact could have found that J.C. constructively possessed the marijuana. Thus, I would affirm the decision *280 of the Court of Criminal Appeals, and I must dissent.
NOTES
[1] J.C. did not petition this Court to review his adjudication as a youthful offender on the drug-paraphernalia conviction and the resulting sentence.